HOOD, Judge ad hoc.
Three sisters, Mrs. Gertie Brunet Collins, Mrs. Isabelle Brunet Roddy and Mrs. Susanne Brunet LeBlanc, instituted this action against their brother, Antoine Brunet, and against State Bank and Trust Company of Golden Meadow, to enforce specific performance of an alleged contract to sell immovable property located in La-fourche Parish and to cancel and erase from the Mortgage Records of that parish an act of mortgage affecting said land. They pray, in the alternative and in the event the mortgage should not be cancelled, that judgment be rendered in their favor and against Antoine Brunet for damages. After trial of the case on its merits, the district court rendered judgment in favor of defendants, and plaintiffs have appealed from that judgment.
Before an appeal was taken to this court the mortgage which plaintiffs sought to have cancelled was actually erased from the records of Lafourche Parish, and this suit was dismissed insofar as it was directed against State Bank and Trust Company of Golden Meadow.
The evidence establishes that prior to December 1, 19S3, plaintiffs and defendant, Antoine Brunet, along with a number of other persons, were co-owners of the following described tract of land situated in Lafourche Parish, Louisiana, to-wit:
A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche at about forty eight (48) miles below the City of Thibodaux, Louisiana, measuring one (1) arpent front, more or less, on Bayou Lafourche by a depth of forty (40) arpents, said tract of land is *71 bounded above by property formerly belonging to Josephine Ledet, now property of vendors, vendee and other heirs of the late Constance Ledet Brunet and below by property belonging to Mrs. Gamite Chouest, wife of Leonce Guidry, now or formerly, together with all the buildings and improvements thereon.
On May 4, 1953, some of these co-owners instituted a suit against the others demanding that this property, and other lands which they owned in common, be partitioned by licitation. Before that suit was brought to trial, however, an amicable settlement of it was made by the parties, uiider the terms of which defendant, Antoine Brunet, agreed to purchase the above described tract of land from all of the other co-owners for the sum of $4,000. In accordance with that agreement an act of sale was executed by all of the other co-owners, including the plaintiffs in this suit, selling and conveying the above described tract of land to defendant. That act of sale is dated December 1, 1953, and was filed for record in Lafourche Parish on February 5, 1954. The consideration stipulated in the deed was paid by defendant, and all three of the plaintiffs cashed the checks which were issued to them representing their portions of the purchase price.
Plaintiffs allege and contend, however, that prior to the time the partition suit was instituted all of the co-owners, except plaintiffs, had agreed that defendant, Antoine Brunet, would purchase this property from the other co-owners for the sum of $4,000, but that plaintiffs had not joined in that agreement because they believed the land to have a greater value. They further allege that after the partition suit was instituted plaintiffs and defendant then entered into an agreement to the effect that plaintiffs would join the other co-owners in a private sale of this property to defendant, but that after that sale had been completed defendant would reconvey to plaintiffs a smaller tract of land out of the property he would have acquired by that deed, which smaller tract would bear a ratio in footage equal to their respective undivided interests in said tract, and that the price of such retransfer would be the amount that plaintiffs would receive as their share of the proceeds of the private sale to defendant.
Plaintiffs then allege that in conformity with that agreement defendant executed a “counter letter,” dated September 24, 1953, which reads as follows:
“State of Louisiana “Parish of LaFourche
“September, 1953
“To Whom It May Concern:
“That I, Antoine Brunet do hereby oblige myself, heirs and assign, to sell to the following sisters,
“Mrs. Gertie Brunet Collins; “Mrs. Suson Brunet LeBlanc; “Mrs. Isabelle Brunet Roddy:
“their individual share or part that they have or own as heirs in property that I have or will acquire from the Estate of Armand Brunet, that they have elect or choose to take their share in land instead of cash, which said property being situated on the left descending bank of Bayou Lafourche, at about Forty Six miles from the City of Thibodeaux, measuring one arpent front by depth there to belonging and being bounded above by land of Armand Brunet, and below by land of Louis Guidry, after that I will have title to same.
“Sign this-day of September 24, 1953 in the presence of two witnesses herein undersigned.
“Antoine Brunet (signed)
“Witnesses:
“S. P. Duet (signed)
“Joseph Charpentier (signed)”
*72 Attached to and forming a part of this document is an affidavit executed by Joseph Charpentier on February 25, 1954, attesting that he executed the above quoted document as an attesting witness, and that it was signed by Antoine Brunet on September 24, 1953. This document, with the attesting affidavit, was filed for record in the Conveyance Records of Lafourche Parish on February 27, 1954.
Plaintiffs contend that the document signed by defendant, dated September 24, 1953, is a “counter letter” or an “agreement to sell in the form of a counter letter” or an “agreement to retransfer,” executed by defendant simultaneously with the signing by plaintiffs of the act of sale dated December 1, 1953, and as such it is binding on defendant. They further contend that prior to December 1, 1953, each of said plaintiffs owned an undivided interest in and to the above described property. They demand primarily that judgment be rendered declaring plaintiffs to be the owners, in in-división, of a portion of said property, the portion so demanded having a frontage of 56.5 feet on Bayou Lafourche with a depth of 40 arpents. They pray, in the alternative, that judgment be rendered condemning defendant to transfer to each of said plaintiffs, an undivided %2 interest in and to the entire tract above described, which tract according to its description has a frontage of one arpent on the bayou. We assume that a frontage of “one arpent,” as used in that description, means a frontage of 192.24 feet.
Defendant contends that the document which he executed on September 24, 1953, is null and of no effect because there is no mutuality of obligation. He pleads, in the alternative and in the event the document is found to have legal effect, that “plaintiffs have sold their undivided interest and received good and valuable consideration, and therefore elected to receive cash instead of a portion of the land.” Further, in the alternative, defendant specially- pleads estoppel in that plaintiffs sold their undivided interest, received good and valuable consideration therefor, and at the time of said sale made no complaint concerning that transaction.
The trial judge supplied written reasons for judgment and one of the reasons he assigned for rejecting the demands of - plaintiffs was that the document which plaintiffs seek to enforce lacks the essential requirements necessary to entitle them to demand specific performance. In that connection the trial judge said:
“We make the further observation that the instrument of September 24, 1953 is in the nat 'e of a contract or promise to sell. Article 2462 of the [LSA-] Civil Code sets forth the requirements which must be present in a contract or promise to sell in order to give either party the right ■ to enforce specific performance thereof. This article states that there must exist a reciprocal consent' of both parties as to the thing, the price and the terms. In the case of Young et al. v. Cistac, 157 La. 771, 103 So. 100, 101, a purchaser of real estate offered to buy certain property for $5,682.50, terms 'one-half cash, note 7% interest’, and in passing upon the validity of the agreement in that case the court said: ‘The contract in this case is silent as to the terms for payment of the balance of the purchase price when one-half cash is paid, and therefore is lacking in one of the essential elements of an enforceable promise to sell, as defined by said article of the [LSA-] Civil Code (art. 2462).’
“At another point in the decision the court further held: ‘The contract must be fixed and the liability of the defendant so certain that the duty imposed upon him by the court in ordering the execution of the contract can be readily ascertained and as readily enforced.’
*73 “In Corpus Juris, vol. 13, pp. 263, 264, [17 C.J.S. Contracts, § 3l], we find the following: ‘Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled or no mode is agreed on by which it may be settled, there is no agreement.’
“An examination of the instrument of September 24, 1953 reveals that no definite price was fixed therein nor were the terms, as to how the price to be paid, fixed, and, more important, said instrument does not set forth what would be transferred, that is, whether an interest in the whole property or whether a specific portion of the whole property. It is apparent that at the time of the execution of said instrument there did not exist a reciprocal consent and understanding on the part of the plaintiffs and defendant as to the thing to be transferred. This is borne out by the fact that in plaintiffs’ petition it is alleged that it was the understanding of the parties that the defendant would transfer a specific portion of the whole tract, which portion was to measure 56.5 feet on Bayou Lafourche by forty (40) arpents in depth, while, in the alternative, it is further alleged that if the Court would find that it was not the intention to transfer a specific portion of the whole property, then the defendant should be ordered to transfer an undivided interest in the whole property. This clearly shows that the plaintiffs themselves were not sure or did not know exactly what was to be transferred to them. The fact that there was not a mutual or reciprocal consent of the parties as to what was intended to be transferred is further borne out by the defendant’s testimony, which shows that he was under the impression that he was to transfer each plaintiff sixteen (16) feet front by forty (40) arpents in depth.
“And therefore it appears to the court that an examination of the instrument of September 24, 1953 and the record in this case, in the light of Article 2462 of the [LSA-] Civil Code and the jurisprudence thereunder, discloses that the instrument herein relied upon by plaintiffs lacks the essential requirements necessary to enforce specific performance.”
We concur with the trial judge in that conclusion. Article 2462 of the LSA-Civil Code provides that:
“A promise to sell, when there exists a reciprocal consent of both parties as’ to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale,, as to give either party the right to enforce specific performance of same.”
The Supreme Court of this state has held repeatedly that the requirements set out in this article of the Civil Code are mandatory before either party may exercise the right to specific performance. In Lousiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879, 886, for instance, the Supreme Court said:
“To give effect to the instrument of December 11, 1953, as plaintiff’s counsel would have us do, would do violence to our codal provisions which demand a promise to sell on one hand and a reciprocal consent to buy on the other between the parties, so as to constitute a meeting of the minds on the thing, the price and terms. These legal requirements are mandatory before either party may exercise the right to specific performance.”
In Lake v. Le Jeune, 226 La. 48, 74 So.2d 899, 901, where plaintiffs sought to enforce specific performance of an alleged agreement to sell immovable property contained *74 in a lease contract, the following language was used:
“But whether the parties intended that the selection was to be made by the heirs of the lessor or by the lessees or by them j ointly it must be concluded that the instant option was indefinite as to price and that there was no compliance with the requirement of LSA-Civil Code Article 2464. Where the price of a sale is to be determined and fixed in the future by experts to be named by the parties, as here, any one of the latter has the power to refuse to appoint; and the result of the arrangement is an uncertainty of price and a consequent nullification of the contract. See Louis Werner Sawmill Company v. O’Shee, 111 La. 817, 35 So. 919.”
And, in Tri-State Transit Co. of Louisiana v. Sunshine Bus Lines, 181 La. 779, 160 So. 411, 412, the court said:
“This contract, in our opinion, is not one which this court can undertake to enforce by injunction. It contemplates the performance of obligations extending over an indefinite period of time, and the details and precise manner in which the business is to be handled are so vague and indefinite that it would be impossible to enforce specific performance of these obligations. For instance, we could not compel the plaintiffs to attend to defendant’s business in the handling of its tickets and depot facilities because the contract does not specifically set out how it is to be done.
“Under the circumstances, it appears to us that the plaintiffs are not entitled to specific performance of the contract.”
Also, in Brown v. United Motor Car Co., 11 La.App. 84, 120 So. 264, 266, the Court of Appeal, Orleans, held that the district court was correct in rejecting defendant’s demand for specific performance, of a contract which it found to be indefinite, using the following language:
“As the defendant in its answer and in its testimony does not state the type of car which was to be purchased, the price thereof, or the time of delivery, this court could hardly order specific performance of so indefinite a contract.”
In the instant case it is apparent from the pleadings, from the documents which were introduced in evidence, and from the parol evidence which plaintiffs sought to introduce to explain those documents, that there was never a mutual consent or understanding between plaintiffs and defendant as to the size or location of the land which was to be conveyed, whether defendant was to convey an undivided interest in and to the whole or a portion of said property, or whether each of said plaintiffs was to acquire title to a separate tract. The principal document upon which plaintiffs rely, being the one signed by Antoine Brunet on September 24, 1953, contains no provision at all as to the price which was to be paid, and the parol evidence introduced establishes that there had been no specific agreement along that line. Also, there was no agreement between the parties as to terms under which the transaction was to be completed. And, finally, the document signed by Antoine Brunet concludes with the words, “after that I will have title to same,” which indicates that Antoine Brunet contemplated that after the transaction referred to in that document, whatever it might be, had been completed he would then own the property therein described. This statement, of course, appears to be inconsistent with his prior commitment “to sell,” but it further demonstrates that there was never a clear understanding among the parties as to what this document was to accomplish. We conclude, therefore, as did the trial judge, that there did not exist a reciprocal consent of both parties as to the thing, the price and the terms, as required by LSA-C.C. Art. 2462, and consequently plaintiffs are not entitled to judgment ordering specific performance of the alleged contract.
*75 In view of that conclusion it is not necessary to determine whether the “counter letter” and the act of sale were executed simultaneously, whether parol evidence is admissible to show the connection between those two documents and the consideration paid or received for either of them, whether defendant has discharged any obligation which he may have owed to plaintiffs, or any of the other issues presented.
For the reasons assigned the judgment of the district court is affirmed.