FOURNET, Chief Justice.
 

 This is an action instituted by three sisters, Mrs. Gertie Brunet Collins, Mrs. Isabelle Brunet Roddy and Mrs. Susanne Brunet LeBlanc, against their brother, Antoine Brunet, to enforce specific performance of an alleged contract to sell immovable property located in Lafourche Parish,
 
 [1]
 
 and is now before us on certiorari to review the judgment of the Court of Appeal, First Circuit, affirming the judgment of the District Court dismissing plaintiff’s suit. See 114 So.2d 69.
 

 
 *405
 
 According to the record the defendant and the plaintiffs, along with other heirs of- Theresa Pitre and Armand Brunet and the heirs of Constance Ledet, were co-owners in indivisión of a certain tract of land.
 
 [2]
 
 In May, 1953, proceedings were instituted for the partition of the property by licitation and pursuant to a compromise agreement between all parties the defendant acquired the property by private sale for and in consideration of the sum of $4,000. It appears however that in order to secure the signatures of the plaintiffs to the instrument, defendant entered into a separate agreement with them whereby he contracted that after the conclusion of the said partition proceeding he would re-transfer to the plaintiffs such interest as they conveyed to him, for the same price they, received from the sale to him, and in evidence thereof executed a counter letter dated September 24, 1953,
 
 [3]
 
 which was duly recorded in the Conveyance Records of Lafourche Parish. The defendant refused to comply with his agreement and after amicable demand, this suit followed.
 

 As stated by the Court of Appeal, the “plaintiffs contend that the document signed by defendant * * * is a ‘counter letter’ or an ‘agreement to sell in the form of a counter letter’ or an ‘agreement to re-transfer,’ executed by defendant simultaneously with the signing by plaintiffs of the act of sale dated December 1, 1953, and as such it is binding on defendant. They further contend that prior to December 1, 1953, each of said plaintiffs owned an undivided 11/112 interest in and to the above described property. They demand primarily that judgment be rendered declaring plaintiffs to be the owners, in indivisión, of a portion of said property, the portion so demanded having a frontage of 56.5 feet on Bayou Lafourche with a depth of
 
 *407
 
 40 arpents. They pray, in the alternative, that judgment be rendered condemning defendant to transfer to
 
 each
 
 of said plaintiffs, an undivided 11/112 interest in and to the entire tract above described * * On the other hand, “Defendant contends that the document * * * is null and of no effect because there is no mutuality of obligation. He pleads, in the alternative and in the event the document is found to have legal effect, that ‘plaintiffs have sold their undivided interest and received good and valuable consideration, and therefore elected to receive cash instead of a portion of the land.’ Further, in the alternative, defendant specially pleads estoppel in that plaintiffs sold their undivided interest, received good and valuable consideration therefor, and at the time of said sale made no complaint concerning that transaction.” [114 So.2d 72.]
 

 The Court of Appeal, in a majority opinion, concurred in the conclusion reached by the Trial Judge that there did not exist a reciprocal consent of both parties as to the thing, the price and the terms, as required by Revised Civil Code Article 2462, and consequently plaintiffs are not entitled to judgment ordering specific performance of the alleged contract.
 

 We are in accord with the holding of the majority, which was also the view of the dissenting judge, that plaintiffs cannot succeed in their primary demand, i. e., that they be declared owners in indivisión of a portion of the property having a frontage of 56.5 feet on Bayou Lafourche with a depth of 40 arpents; but we cannot agree with the conclusion of the majority rejecting plaintiff’s alternative demand seeking a retransfer of their proportionate interest in and to the tract. It is obvious, as pointed out in the dissenting opinion, that although the document was not skillfully drawn, this counter letter describes the “thing,” the “price” and “terms” within the meaning of Article 2462 of the Civil Code.
 
 [4]
 
 The document clearly shows that the defendant agreed to sell to his sisters “their individual share or part that they have or own as heirs in property that I have or will acquire,” meaning that after acquiring all of the outstanding interests of his co-heirs, he would convey to his sisters the proportionate interest which each owned at the time of the execution of the counter letter. The statement that “they have elect or choose to take their share in land instead of cash” when considered with the remainder of the instrument clearly evidences the intention of the parties that
 
 *409
 
 the plaintiffs had elected or chosen to take their share in land instead of cash and that their brother, the defendant, had agreed that he would reconvey to them their original proportionate share after he had acquired title to the property from all the heirs, for which they agreed to pay him in cash their pro rata share of the purchase price paid by him.
 
 [5]
 

 But if it can he said that the instrument is ambiguous in any material aspect, that objection is dispelled by the uncontradicted oral evidence, which clearly supports the construction given above. All the parol evidence admitted was objected to below, under Article 2276 of the Code,
 
 [6]
 
 and we think the objection was erroneously sustained by the trial judge, ^for under the jurisprudence of this Court such evidence is always admissible not only to show intent when the contract is ambiguous but also to show motive for the execution of the contract; it was not offered to invalidate or destroy the agreement, but on the contrary to support it. In the case of Dickson v. Ford, Clerk, 38 La.Ann. 736, wherein the Court took occasion to make a thorough and extended review of our jurisprudence on the subject, the necessity and wisdom of the rule induced the following reflections: “The reason or the philosophy of the rule which, as an exception, flows logically from the very terms of the general rule, is that parol evidence, in such cases, is admitted, not
 
 against
 
 or
 
 beyond
 
 what is contained in the acts as a contradiction of the clear recital or legal meaning of the stipulations contained therein, but on the contrary, to give effect to the contract arising therefrom, by supplementing necessary information omitted therefrom, or to ascertain the true intent of the parties when the same is not clearly expressed or described therein. As thus understood and construed, the rule is not amenable to the charge that it tends to destroy or impair the sanctity or binding force of authentic acts, but on the con
 
 *411
 
 trary, it tends directly to enhance the validity and efficacy of such acts, by substituting light for darkness, certainty for obscurity, and truth for error.” 38 La.Ann. at page 740. See, also, Landry v. Landry, 40 La.Ann. 229, 3 So. 728; Guaranty Bank & Trust Co. v. Hunter, 173 La. 497, 137 So. 904; Citizens Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822; Warden v. Porter, 228 La. 27, 81 So.2d 707.
 

 While the plaintiff is entitled to specific performance of the contract, it appears that the one arpent tract purchased by the defendant from his co-heirs was composed of two half arpent tracts acquired at different times, and due to the complicated family relationships and the difference in marital status at the time their ancestors acquired the same, the plaintiffs’ interest therein differed. According to the record in the partition proceeding, which forms a part of the record in this suit, these tracts are known and designated as Tract C and Tract D, and the plaintiffs’ interest in Tract C was a 19/168th each, while in Tract D their interest was a l/12th each.
 

 For the reasons assigned, the judgment of the District Court and of the Court of Appeal are annulled and set aside and it is ordered, adjudged and decreed that there be judgment in favor of the plaintiffs, Mrs. Gertie Brunet Collins, Mrs. Isabelle Brunet Roddy and Mrs. Susanne Brunet LeBlanc, and against the defendant, Antoine Brunet, ordering the transfer to the plaintiffs, at defendant’s cost, of a 19/168th interest each in Tract C and a l/12th interest each in Tract D, referred to as Tracts C and D in the partition proceeding and together comprising the property described as “A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche at about forty-eight (48) miles below the City of Thibodaux, Louisiana, measuring one (1) arpent front, more or less, on Bayou Lafourche by a depth of forty (40) arpents; said tract of land is bounded above by property formerly belonging to Josephine Ledet and to heirs of the late Constance Ledet Brunet and below by property belonging to Mrs. Gamite Chou-est, wife of Leonce Guidry, now or formerly, together with all the buildings and improvements thereonupon plaintiffs’ payment to the defendant of their respective pro rata shares received by them from the sale of this particular property, arrived at after deduction of costs and expenses of the partition proceedings allocable thereto, within thirty days after this judgment becomes final; defendant to pay all costs.
 

 [1]
 

 . The action was also against the State Bank & Trust Co. of Golden Meadow to have cancelled and erased from the mortgage records of the Parish a mortgage held by it affecting the said land. That matter is no longer being pressed.
 

 [2]
 

 . The description of the land is: “A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche at about forty eight (48) miles below the City of Thibodaux, Louisiana, measuring one (1) arpent front, more or less, on Bayou Lafourche by a depth of forty (40) arpents, said tract of land is bounded above by property formerly belonging to Josephine Ledet, now property of vendors, vendee and other heirs of the late Constance Ledet Brunet and below by property belonging to Mrs. Clamite Chouest, wife of Leonce Guidry, now or formerly, together with all the buildings and improvements thereon.”
 

 [3]
 

 . The body of the letter reads as follows: “That I, Antoine Brunet, do hereby oblige myself, heirs and assigns, to sell to the following sisters, Mrs. Gertie Brunet Collins; Mrs. Susan Brunet LeBlanc; Mrs. Isabelle Brunet Roddy; their individual share or part that they have or own as heirs in property that I have or will acquire from the Estate of Armand Brunet, that they have elect or choose to take their share in land instead of cash, which said property being situated on the left descending bank of Bayou Lafourche, at about Forty-Six miles from the City of Thibodaux, measuring one arpent front by depth thereto belonging and being bounded above by land of Armand Brunet, and below by land of Louis Guidry, after that I will have title to same.”
 

 [4]
 

 . That Article, in so far as pertinent, declares: “A promise to sell, where there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same. * * * ”
 

 [5]
 

 . It appears from the record that four tracts of land had been acquired during three generations of the family concerned; that there were numerous heirs who had interests that varied widely and moreover differed as between the tracts. Eventually three brothers purchased at private sale all of the tracts and the agreement of the heirs was that the proceeds were to be deposited with an attorney and after deduction of the expenses of partition and sale, the remainder was to be divided between the claimants according to their proportionate interest. The counter letter had reference only to tbe tract described therein. It appears that after the signatures of all heirs had been obtained to the sale, the defendant deposited the purchase price with the attorney handling the matter. Plaintiffs did not receive any payment .until distribution was made by the said attorney, through checks to the various heirs dated March
 
 1, 1954,
 
 and accompanied by a tableau of distribution.
 

 [6]
 

 . “Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”