TATE, Judge
(dissenting).
With the utmost deference for my learned and conscientious brethren, I must respectfully dissent from the majority’s reversal of the trial court.
An amplification of the uncontradicted facts will show, I believe, that the majority has set aside a duly-recorded 1943 mortgage and 1947 sale simply upon an unsubstantiated suspicion that they were simulations, although the instruments were not questioned by any of the parties until this suit was filed in 19S7 and although the sworn evidence in this record reflects without contradiction that the land was sold by the parents for an adequate consideration to their son who lived with them, worked the place for them, and paid all their expenses '(including substantial medical and funeral bills) without contribution from any of his eight brothers and sisters.
Under similar circumstances, our Supreme Court in Blackman v. Brown, 155 La. 959, at page 962, 99 So. 711, at page 712, refused to annul a sale as a donation in disguise, the court declaring: “ * * * evidence which merely casts suspicion is insufficient to cause the court to take the property from one man and give it to another * * * The law does not favor actions by forced heirs to undo transactions of their ancestors as done in fraud of their rights. Such actions can only succeed where the proof adduced in support thereof is convincing, if not irresistible.”
To recapitulate the facts: On January 9, 1947, Cornelius McBride (then aged 78 or 79, Tr. 55) and his wife sold their 35-arpent tract to their son, William (the defendant herein) for the stated consideration of $2,-500 cash in hand paid, which price the evidence reflects to be the true value of the land at the time. The deed also contained a reservation of the usufruct in favor of the vendors. The parties were all illiterate and signed by their marks.
As the defendant William alleged in his pleadings and as proved by the evidence, the true consideration was not the payment of $2,500.00 cash. Evidence correctly admitted by the trial court[1] showed that the true consideration was: (a) the cancellation of a recorded mortgage dated November 24, 1943 in the amount of $1,400, bearing 8% interest from date, executed by the parents in favor of William, the defendant; and (b) the subsequent payment of $1,000 in cash by William to his father, after the crops of the year were completed.
Uncontradicted evidence was adduced to support the validity of this consideration, as well as of the 1943 mortgage which was *357 cancelled as part of the consideration for the 1947 sale.
As to the mortgage, Lloyd Franques, the notary public before whom both the 1943 mortgage and 1947 sale were executed, stated that about three or four years before the sale, the father McBride had come to him to prepare a sale of the land to William to pay a debt he owed his son. At that time, the notary had persuaded the father that it would be preferable to execute a mortgage in William’s favor to secure the debt. The land was then encumbered by an outstanding Federal Land Bank mortgage of initial face value of $700, upon which some payments had been made by William and some by the parents. The balance due upon this was paid through the notary by William at the time the mortgage in favor of William was executed. A representative of the Federal Land Bank testified that the balance of $357.18 due on the mortgage was paid by Mr. Franquez on November 26, 1943 (that is, two days after the date of the mortgage), and this prior mortgage was then cancelled.
Bertrand McBride, a brother and a plainr tiff herein, testified that about thirteen years before the 1958 trial, his father Cornelius had offered to sell him the property, since he then owed William about $1,300. The witness advised his father to sell the land to William, since the debt was owed to William.
The defendant William himself testified, to the same effect, that over three or four years prior to 1943 he had advanced his aged parents, for whom he worked the place and with whom he lived, approximately eleven hundred dollars, and that the 1943 mortgage was passed to secure this amount, as well as the balance of the Federal Land Bank mortgage and the taxes which William also paid at the time the 1943 mortgage to him was executed.
No evidence was introduced to contradict the validity of this 1943 mortgage. The only witness testifying in favor of the plaintiffs (including of the eight living brothers and sisters, six of whom are plaintiffs herein) was Francis Bertrand, a brother, with whose family the aged father (then 88 or 89 years of age) was living at the time this suit was filed in 1957, on the eve of the father’s death a little later that year and immediately prior to the trial below. This witness’ only reason for believing that defendant William did not pay their father for the land was that “Because he [William] was like me, he didn’t have any money.” (Tr. 94.)
(As to William’s lack of money, the evidence indicates that this defendant was single and without family expenses and that prior to the sale (afterwards he kept the entire crop proceeds) he had worked the place on shares, receiving one-third of the crop. Francis and his family moved to the place with William and their father after the mother died in 1950, and Francis admitted that he made the crop on the place in 1951 and gave William one-third of the crop, keeping the remaining two-thirds for himself as tenant; the crop for the year 1951 amounting to $2,500. Tr. 90, 94. Aside from indicating the source of William’s funds, it is difficult to reconcile Francis’ recognition of William’s ownership in 1951, immediately after the sale, with his present claim some eight years later that the sale was simulated. That William was a thrifty person is additionally indicated by the circumstance that it is stipulated that William, and William alone of the children, paid the entire funeral expenses of $439.80 for his father following the latter’s death on September 15, 1957 (after the filing of this suit), and also the entire last medical and funeral expenses of his mother in the amount of $810.87 following her death on March 11,1950. (Tr. 45,66.)
I do not wish to labor the point further, but it is equally well proved without contradiction that William paid his father $1,-000 following the sale of the 1947 crops. The potato-crop purchaser and a plaintiff brother corroborate William’s testimony to this effect, which is additionally corrobo *358 rated by the notary’s testimony that at the time the sale was executed William gave his father a check or note for this amount to be paid when the crops were made.
To set aside the sale as a simulation, when the defendant has proved the consideration without any contradiction, the majority seems to me to ignore Civil Code Article 2444 [2] and the jurisprudence thereunder, as well as all of the equities of the present case. I am completely unable to see how the 1943 mortgage, the consideration for which is so fully proved, can be ignored simply upon a suspicion that it is a simulation. To hold that the defendant had to prove more fully than he did at the 1958 trial (some fourteen years later) the consideration for the 1943 mortgage casts an impossible burden, one that might even tax a banker keeping complete records for a reasonable length of time, to say nothing of this illiterate and thrifty farm laborer who is being divested by the majority’s decree of his earnings and investment, unquestioned for over ten years prior to the filing of this suit.
One further aspect gives me great concern. By reconventional demand, the defendant alternatively prays for return of certain sums expended by him, in the event the court should set aside the sale. For instance, it is uncontested that he had placed a tenant house on the land at a cost of $800 about three years before the suit. (Tr. 54-55.) This demand is dismissed by us. Likewise, it is stipulated that William had paid funeral expenses of approximately twelve hundred dollars for his parents (Tr. 45, 66), which funeral expenses are a privilege upon the immovable property of the decedents even without the necessity of recordation and which do not prescribe by three years (C.C. Arts. 3252, 3276; Sanders v. Sanders, La.App. 1 Cir., 85 So.2d 61); yet the majority rejects the defendant’s alternative demand by way of reconvention for recognition of his mother’s funeral expenses, which (as well as the father’s funeral expenses) are a valid privilege upon the land if indeed the sale is a nullity.
For the reasons above-stated, and because I think that if the majority opinion stands grave injustice will result, I must respectfully dissent.

. See LSA-Civil Code, Article 1900: “If the cause expressed in the consideration should be one that does not exist, yet the contract cannot be invalidated, if the party can show the existence of a true and sufficient consideration.” Collins v. Brunet, 239 La. 402, 118 So.2d 454.

. “The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.” (Italics mine.)