TATE, Judge.
This is a suit against a bank by two debtors to recover $2,450.46 which they 'allege they overpaid to the bank. The plaintiff debtors appeal from dismissal of their suit.
This appeal is essentially factual. The plaintiffs turned over fire insurance proceeds to the bank, which were $2,450.46 in excess of a mortgage debt due on a burned boat. The bank applied this excess to another debt due by the plaintiffs, allegedly with their consent; the plaintiffs deny this and claim that the sum still belongs to them. This is the substance of the factual dispute between the parties.
Using round figures, this litigation arises out of the following’ circumstances, which includes as of some significance the secondary liability of Leo Theriot as endorser on two notes made by the plaintiffs and held by the bank:
The plaintiffs Gisclair and Martin (hereinafter: “G & M”) owned a crewboat, the Tiger Shark. The present defendant bank (“First National”) held a mortgage on this vessel. The mortgage had originally been held by Theriot, who had endorsed the mortgage note to the bank, receiving its discounted value. Due to G & M’s failure to pay, First National had obtained a judgment against them (but not Theriot) upon the mortgage note. As will be shown below, as endorser Theriot also remained liable to the bank for the full unpaid balance of the note.
The Tiger Shark had burned. On July 19, 1960, after negotiations, the net insurance proceeds of $19,400 were paid to First National by check of G & M’s attorney. There was nearly $17,000 then due on the judgment for the Tiger Shark debt. This left a surplus of some $2,400 which was retained by the bank (and applied by it in connection with another debt owed by G & M).
The plaintiffs G & M claim that this surplus of $2,400 still belongs to them. On *597 the other hand, First National contends that, with the consent of the plaintiffs, this .amount was one of the items applied to reduce the balance of another judgment owed by them to the bank in the amount of :$24,000.
This second judgment was obtained for ■the unpaid mortgage on a second crewboat •owned by the plaintiffs, the Kingfish. As judgment creditor, the bank seized and sold ■this ship at marshal’s sale. Theriot had •originally held and endorsed to First National the Kingfish mortgage note also, thus being liable with G & M to the bank .for the full amount due. Theriot purchas•ed the Kingfish at the marshal’s sale pro-woked by the bank.
After his purchase, Theriot resold the Kingfish to Moise and Pitre. He required these purchasers to sign a note in the .amount of $24,000 in favor of First National, which Theriot endorsed. This note was given to the bank by Theriot to secure, inter alia, Theriot’s liability for the unpaid balance still due by him as endorser and transferor of the Kingfish mortgage note •executed by G & M, the Kingfish’s prior •owners.
The plaintiffs G & M contend that, by the execution of this subsequent note, Moise and Pitre assumed the payment of •G & M’s debt due on the Kingfish. Therefore, it is argued, when this Moise and Pitre note was paid in 1961, this amounted to payment of the full $24,000 owed at one time by G & M on their own Kingfish •debt; and thus the plaintiffs are entitled to a refund of the $2,400 surplus from the Tiger Shark insurance proceeds which had previously been applied to or used as collateral for the unpaid balance of the King-fish debt (which balance was discharged by the Moise and Pitre payment allegedly ■on behalf of the plaintiffs G & M)
The evidence, however, without contradiction shows that the note of Moise and Pitre was their own debt for the purchase -price of the Kingfish when bought by them from Theriot. (Theriot, as noted, had validly purchased this vessel at the marshal’s sale executing the bank’s judgment against G & M, the boat’s previous owners.) This was so testified by Pitre (Tr. 11-64), Theriot, Theriot’s attorney, and the bank official handling the transaction; the plaintiffs G & M did not testify otherwise. Payments on the Moise and Pitre note were thus payments to Theriot, and were used by him to reduce his liability as endorser for the unpaid balance of the Kingfish debt.
In making their contention, the plaintiffs principally rely upon a notation in the bank records that the Moise and Pitre note was a “ren” (renewal) of the balance due by the plaintiffs. As shown above, however, the evidence proves that the note was not intended to pay the plaintiffs’ debt. The evidence indicates that this notation was simply an intrabank identification of the transaction in connection with Theriot’s continuing liability as endorser (see below) for the full unpaid balance due on the Kingfish judgment. The Moise and Pitre note was pledged through Theriot to secure the balance due the bank on this judgment, for payment of which the bank looked only to Theriot, a substantial businessman.
It should be remembered that Theriot, as endorser of G & M’s notes, remained liable to First National for the full amount of these notes of G & M endorsed over by him to the bank, even though First National obtained judgment on the notes against G & M alone without joining The-riot. A suit and judgment against one debtor does not bar subsequent suit against nor discharge a codebtor in solido. LSA-C.C. Art. 2095; Polk Chevrolet, Inc. v. Vicaro, La.App. 1 Cir., 162 So.2d 761. Thus, Theriot’s subsequent transactions and payments with regard to the Kingfish debt were to reduce his own secondary liability to the bank as G & M’s endorser. Of course, Theriot’s payment through the Moise and Pitre note did not discharge the debt of G & M, the maker and primary obligor, since Theriot became subrogated to *598 the bank’s rights against G & M by his own payment of G & M’s debt for which he was only secondarily liable. LSA-C.C. Art. 2161; LSA-R.S. 7:121; see also, LSA-C.C. Arts. 3052, 3053.
The trial court correctly concluded that the plaintiffs did not prove their allegation that the balance of the debt they themselves owed on the Kingfish debt was satisfied through the payment of the Moise and Pitre note.
We further agree with the trial court that a “reduction of judgment” and compromise agreement, executed as part of the transaction by which the plaintiffs’ attorney turned over to the bank the $19,400 net insurance proceeds, fairly plainly indicates that such proceeds were to be utilized not only to satisfy in full the judgment owed for the insured Tiger Shark but also to reduce the net balance owed by the plaintiffs G & M on the Kingfish judgment. See Exhibit D-3 at Tr. 1-64. This agreement was executed by both of the plaintiffs G & M, by the bank, and by Theriot, all parties being represented by counsel. It constituted authorization to the bank to pay the surplus Tiger Shark insurance proceeds to Theriot’s account; as between the bank and Theriot, Theriot as endorser undertook to arrange for full payment without reduction of the entire Kingfish debt owed by G & M, but the bank and Theriot reduced the net balance due by G & M on the King-fish judgment to some $7,000, taking into consideration several credits due them (including the surplus insurance received for the Tiger Shark’s burning).
If the written agreement D-3 be regarded as ambiguous in such respect, the parole evidence (admissible to uphold the agreement, although not to contradict it, Collins v. Brunet, 239 La. 402, 118 So.2d 454) proves this without contradiction to be the intent and meaning of the agreement. Both of the plaintiffs testified that the entire proceeds were turned over to the bank to be applied to their entire indebtedness owed to it. 11-76 (Gisdair)1; 11-94' (Martin). The only attorney testifying-stated without contradiction that the reduction of judgment agreement took, into' account the surplus Tiger Shark insurance proceeds in arriving at the reduced figure-to be owed by G & M on the Kingfish judgment. 11-100, 113, 118.
The trial court correctly held that the defendant bank was authorized by plaintiffs.-, to and did apply the $2,450.46 surplus from-the Tiger Shark insurance proceeds to reduce the balance owed by the plaintiffs on the Kingfish judgment. The bank is therefore not liable to the plaintiffs.
For the foregoing reasons, the- judgment of the trial court dismissing the plaintiffs’ suit is dismissed at their cost.
Affirmed.