LANDRY, Judge.
This is an action for specific performance of an alleged written contract to buy and sell real property. Plaintiffs maintain the agreement sued on stipulates for the sale of certain specifically described parcels of land provided certain conditions set forth in the agreement are fulfilled. Acting on the assumption they had complied with the terms of the agreement, plaintiffs erected a residence on subject property and now seek to have title thereto transferred to them. The trial court rejected plaintiffs’ demands for specific performance but awarded plaintiffs judgment for the construction cost of the residence involved. Plaintiffs and defendants have appealed, each alleging certain errors in the judgment rendered below. We remand this cause to the trial court for further proceedings as hereinafter directed.
Choctaw Home Builders, Inc. (Choctaw), the estate of James R. Fabre and Mrs. Evelyn F. Bringhurst (plaintiffs) as assignees of one Thomas C. Keating, pray that defendant Lena, Inc. (Lena) be ordered to convey title to plaintiffs to Lot 62, West Merrydale Subdivision, Third Filing, East Baton Rouge Parish. Alternatively plaintiffs assert entitlement to return of the construction cost of a residence erected on the subject property by plain-jiffs as possessors thereof in good faith. In the further alternative, plaintiffs pray for judgment on quantum meruit. Additionally, Mrs. Bringhurst seeks damages for reputed mental and emotional stress occasioned by defendants’ avowed failure to comply with the terms of the agreement.
Plaintiffs’ appeal urges the lower court erred in dismissing their demand for specific performance. Defendants’ appeal is based on the contention the trial court erred in permitting plaintiffs’ recovery of construction costs inasmuch as plaintiffs were possessors in bad faith. Alternatively, defendants claim the trial court improperly permitted recovery of certain construction costs not established by sufficient proof. Certain other alleged errors claimed by detendants need not be mentioned at this juncture.
By way of informative background, it appears defendants sought to develop a certain tract of land into a residential subdivision known as West Merrydale. In accordance with said plan defendants began in 1964, entering into agreements with several parties to sell a number of lots in the subdivision at specified future dates. The apparent purpose of said agreements was to provide funds to defray - improvement costs. One such contract was confected with Thomas C. Keating proposing the possibility of a sale of Ihirty lots in the named development. The Keating agreement listed each of the thirty lots by number and assigned to each a designated purchase price. Section 1 of the Keating agreement calls for the purchase of ten specific lots, each with its own set price and further stipulated a specific down payment for each enumerated parcel of land. All rights under the Keating agreement were duly assigned by said individual to plaintiffs herein. Sections 2 through 8 of the contract set forth a general scheme or plan for developing the subdivision, which obligation rested upon defendants as owners of the land.
Section 9 of - the contract in question contains the following germane provision:
“As an additional consideration for this sale and agreement, the sellers here *26 by give and grant to the Buyer the option of purchasing each of the following numbered lots in “West Merrydale-Third Filing” for the respective prices set opposite the respective lot numbers upon the following terms and conditions, to-wit
The remainder of the above quoted provision proceeds to list twenty lots by number and fixes a price for each. Included therein is Lot 62, the property involved herein.
Immediately following are paragraphs 9-c, 9-d and 10, which form the crux of this controversy and read as follows:
“(c) Term of the Option:
(1) This option shall terminate eighteen (18) months after the written notification by Sellers to Buyers to take title to the lots which Buyer has here-inabove agreed to purchase. In order to execute this option, Buyer shall give Sellers notice in writing of his intention to execute this option insofar as there then remain any unselected lots (including substituted lots) in the optioned lots , not later than thirty (30) days before the expiration of such eighteen (18) month period and Buyer shall take title and pay the prices (as hereinabove set out) before the expiration of said eighteen (18) month period.
(2) In the event that the Buyer shall take title to a total of twenty (20) lots, either under the above agreement to purchase or under this option, this option shall become executed and the Buyer shall be bound and obligated to take title and pay for the remaining ten (10) lots simultaneously with the taking of title to the twentieth lot. (In calculating the “twentieth” lot only those lots title to which have not been returned to Seller by Exchange and not repurchased by Buyer shall be used.)
(d) Termination of Option: In the event that this option is not executed in full within the Term of this Option, the Buyer shall have no right to purchase any further lots in “West Merrydale-Third Filing from present Sellers, and he shall, and he does hereby, bind and obligate himself to execute and deliver to Sellers a recordable instrument formally releasing this option insofar as any lots then remaining under .this option are concerned.
10.
The parties hereto consent and agree that time is of the essence of this agreement. In the event that the Sellers have complied with the provisions of paragraphs 2, 3, 4 and 5 above, and the Buyer neglects or fails to complete the sale of the ten (10) lots he is required to purchase under this agreement within the aforesaid fifteen (15) day period after written notice from the Sellers, the Sellers shall be entitled at their option either to specific performance or to terminate this contract (including said option) in its entirety and to retain the payments made herewith as liquidated damages.
In the event that Sellers have not complied with the provisions of Paragraphs 2, 3, 4 and 5 above, on or prior to March 31, 1965, then, and in that event, the amounts paid by Buyer to Sellers as set forth in Paragraph 1 above shall be returned by Sellers to Buyer, and upon such return Buyer shall have no further claims under this contract.”
The remaining paragraphs or sections of the contract deal with administrative matters of no concern in the controversy at hand.
It appears the salient issue presented is one of interpretation. In essence plaintiffs contend paragraphs 1 through 8 of the agreement constitute an agreement to buy and sell obligating plaintiffs to purchase and defendants to sell the ten lots expressly described and priced in paragraph 1. *27 Plaintiffs also urge that the provisions of paragraphs 9 and 10, supra, contain an option to purchase an additional 20 lots for a period of 18 months commencing March 31, 1965 (the admitted date of notification to pass sale on the original 10 lots called for in paragraph 1), unless sooner executed. However, according to plaintiffs, during the option period the contract became executed, pursuant to paragraphs 9(c) (1) and (2), when plaintiffs admittedly took title to the 20th lot. It is plaintiffs’ position that taking title to the 20th lot within the 18 month period, by the terms of paragraph 9(c) (2), converted the contract into an agreement to buy and sell the remaining 10 lots and plaintiffs are entitled to specific enforcement thereof.
Defendants, however, maintain the agreement is an option pure and simple, granted under any and all circumstances for a period of 18 months from the date of notification. On this basis they argue that parol evidence is inadmissible to extend the expiration date thereof and neither is such evidence admissible to establish that the agreement is contract to buy and sell real property. Defendants concede, however, a total of 20 lots were purchased by plaintiffs within the 18 months option period. They also insist that expiration of the stated option period terminated plaintiffs’ right to any further purchases.
As previously noted, the trial court, after rejecting plaintiffs’ demands for specific performance, rendered judgment in favor of plaintiffs for the amount found to have been expended for materials and labor in the construction of the residence in question. In so doing, the lower court applied the provisions of La.C.C. Article 508, paragraph 4, which permits recovery of the cost of material and labor by a bona fide possessor who constructs improvements on the property of another. Said determination was not reached on the ground plaintiffs were possessors in good faith. Rather, the record reflects the trial court held plaintiffs were in bad faith but nevertheless allowed recovery on what amounts to an estoppel. In this regard the court’s reasons for judgment indicate recovery was permitted on the finding that defendants were aware' of the progress of the construction but made no objection thereto. On this premise judgment was rendered in favor of plaintiff Choctaw against defendant Lena in the sum of $16,194.36. The demands of all other petitioners were rejected. Choctaw and Fabre’s estate have appealed. Mrs. Bringhurst appealed but did not timely post an appeal bond. Consequently this court is without jurisdiction to hear her appeal.
In contending the trial court erred in rejecting their claim for specific performance, plaintiffs maintain they complied fully with the contract terms and thus became bound by the provisions of paragraph 9(c) (2) to purchase Lot 62 immediately upon taking title to 20 other lots, which plaintiffs did timely. The record discloses that throughout the trial below plaintiffs repeatedly attempted to introduce parol evidence to establish fulfillment of the terms of the agreement. Plaintiffs also contended below that parol evidence was admissible to establish their alternative plea of good faith possession thus entitling them to recovery of construction costs. Notwithstanding plaintiffs’ attempts to establish their said positions by parol evidence, the trial court refused to permit verbal testimony concerning the circumstances attending the alleged sale of nine additional lots purchased by plaintiffs following the sale of the twentieth lot by defendants. In so doing, we find our brother below fell into error.
As contended by defendants, our law is settled to the effect that parol evidence may not be employed to prove title to real property. La. C.C. Articles 2275 and 2440; Harvey v. Richard, 200 La. 97, 7 So.2d 674.
Equally well established is the rule that parol evidence is not admissible to es *28 tablish an extension of the term of an option to sell real estate. DiCristina v. Weiser, 215 La. 1115, 42 So.2d 868.
Plaintiffs point out, however, under authority of Collins v. Brunet, 239 La. 402, 118 So.2d 454, that parol evidence is admissible in an action for specific performance of a contract to sell real property to show intent or clear ambiguities when offered to enforce the terms of such an agreement rather than invalidate or destroy the contract.
In view of the language employed in the contract presently before us, we conclude its terms are ambiguous, uncertain and open to more than one possible interpretation.
Considering the provisions of Paragraph 9(c) (2) and 9(d), we note a seeming ambiguity or uncertainty. It further appears these terms may well be inconsistent, contradictory or irreconcilable. Paragraph 9(c) (2) ostensibly lends support to plaintiffs’ contention that upon purchase of twenty lots plaintiffs became obligated to buy and defendants bound to sell an additional 10 lots. If this were the true intention of the parties, there would be obvious merit in plaintiffs’ claim to specific performance. Collins v. Brunet, supra.
On the other hand, Paragraph 9(d) would appear to support defendants’ position that the contract intended all purchases, irrespective of the number to which plaintiffs were entitled, must be made within an option time of 18 months. In view of the aforesaid seeming ambiguity and apparent inconsistency of contract terms, we find that parol evidence is admissible herein to show the true meaning and intent of the contracting parties. Collins v. Brunet, supra.
We also find the evidence sought to be introduced by plaintiffs was admissible in support of their alternative plea for recovery of construction costs predicated upon their being possessors in good faith. To establish good faith possession, it is not necessary to establish title. La. C.C. Article 508 requires only that the claimant be a bona fide possessor. La. C.C. Article 3451 defines a bona fide possessor (possessor in good faith) as one who has just reason to believe himself the master of the thing possessed, although he may not be in fact the owner.
A promise to sell, when accepted by the prospective purchaser, is analogous to a sale. In such instances the “buyer” acquires a real right tantamount to a sale and which entitles him to maintain an action for specific performance of the contract to sell. Girault v. Feucht, 117 La. 276, 41 So. 572; Herndon v. Wakefield-Moore Realty Company, Inc., 143 La. 724, 79 So. 318; Barfield v. Saunders, 116 La. 136, 40 So. 593. In the case at hand, plaintiffs possess pursuant to a written agreement which they contend amounts to an agreement to buy and sell. If plaintiffs’ possession is of the character claimed, plaintiffs are, in our view, bona fide possessors within the meaning of the term as employed in La.C.C. Article 508.
Ruth v. Buwe, 185 La. 204, 168 So. 776, relied upon by defendants, is inapposite to the present case. In the cited authority the possessor involved was relying upon a verbal agreement to sell the property in question.
Nor do we find that Elrod v. Hart, La. App., 146 So. 797, also quoted and depended upon by defendants, decisive of the issue at hand. In the Elrod case, supra, plaintiff suing for the recovery of the value of certain improvements, had no written agreement with the owner.
It follows that the judgment rejecting plaintiffs’ demands for specific performance must be reversed and set aside. It also follows that the money judgment rendered in plaintiffs’ favor must likewise be reversed and set aside inasmuch as the lower court improperly excluded admissible evidence by which plaintiffs sought to establish their alternative claim as alleged good faith possessors.
*29 We can readily anticipate that upon trial of this matter on remand numerous questions of admissibility of parol evidence will confront the lower court. In the interest of expediting a conclusion to this matter, we herewith direct the trial court to rule upon each such objection. We further direct that should the lower court hold any tendered parol evidence inadmissible upon objection, the party offering same be permitted to enter same of record under a proffer of evidence as authorized by LSA-C.C.P. Article 1636. Such procedure would eliminate the necessity of a further remand should the trial court improperly sustain an objection to any admissible evidence.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court rejecting and dismissing the demands of plaintiffs Choctaw Home Builders, Inc. and Estate of James R. Fabre against defendants Lena, Inc., John R. Grand, Jr., T. Lacy Grand and Jeanne Grand Murphy, be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that the judgment of the trial court rejecting and dismissing the alternative demands of plaintiff Estate of James R. Fabre against the hereinabove named defendants, be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff Choctaw Home Builders, Inc. and against defendant Lena, Inc., in the sum of $16,194.36, be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that all costs of this present appeal be paid by defendant Choctaw Home Builders, Inc., all other costs to await the final outcome of this matter.
It is further ordered, adjudged and decreed that this cause be and the same is hereby remanded to the lower court for further proceedings consistent with the views herein expressed.
Reversed and remanded.