YELVERTON, Judge.
This is an appeal from a judgment in favor of Leo Heth and against Cheryl Allen Moore, administratrix of the Estate of Edgar Allen, ordering the conveyance to Leo Heth of certain immovable property, the subject of a lease and option to purchase. The trial court found that there was a long term lease agreement containing an option to purchase; that Heth, the lessee, validly and timely exercised the option; and that the Estate of Allen was required to specifically perform the contract respecting the sale of the immovables. The Estate of Allen appealed this judgment. We affirm.
In 1966, Edgar Allen and his wife owned an 80 acre farm situated in Tangipahoa Parish. The farm was equipped for dairy *766 ing, including a dairy barn and several pastures. Heth was in the dairy business and had been operating his dairy and pasturing his herd of dairy cows on a rented farm some miles distant from the Allen place. Heth learned that Allen wished to stop dairying and lease his place. It was generally a better place and, besides, Allen was agreeable to a long term lease followed by an option to purchase.
So it was that in late February of 1966 the Allens and the Heths went to the offices of Frank J. Edwards, Jr., then an attorney in Amite, where they asked him to draw up a lease for them. They informed Mr. Edwards that Allen owned this dairy farm and that he was going to lease the dairy part of it to Mr. Heth. He also had in mind selling the property and they told Edwards that they wanted him to draw up a lease for seven years and to provide for an option to purchase at the expiration of the lease. The lease payments were to be credited on the sale price, if Heth chose to buy the property at the expiration of the lease.
Based on those instructions, Edwards prepared the lease. The rental was to be $100 per month. The sale price was a total of $24,000. The lease was prepared to run for seven years at $100 per month. This accounted for the payment of $8,400 of the purchase price. There remained a balance of $15,600 which Allen indicated he would be willing to accept either in cash or in monthly payments. Accordingly, Edwards, using his interest book, calculated the monthly payments over a period of 10 years at 5% interest, and determined that the monthly payments would be $165.-47. This is what he wrote into the lease as the amount of the monthly payments to commence on March 31, 1973, should the Heths exercise their option to purchase.
Seven years passed. The Allens continued to live in their home situated in the extreme northwest corner of the 80 acres on which an acre had been excluded from the lease and option. The Heths carried on their dairying business, apparently successfully, and the relationship between the parties was good. On March 16, 1973, Heth wrote a letter to Allen indicating .that he wished to exercise the option to purchase. The parties then met in the office of an attorney to sign the papers. At this time Allen inexplicably refused to sign. We do not know what prompted him to go as far as the attorney’s office with Heth then refuse to execute the sale, because not long after that incident Allen died and the record does not contain any testimony by him.
After Allen refused to sign the act of sale, Heth filed suit on March 30, 1973, for specific performance. Then, and on the last day of each month since, he has paid $165.47 into the registry of court. Allen died during the month of April. Mrs. Edgar Allen, his widow, and Cheryl Allen Moore, his sole heir, filed suit on June 1, 1973, for possession of the disputed property. Cheryl Allen Moore was subsequently substituted as party plaintiff on July 5, 1973, in her capacity as administratrix of the estate. The two cases were consolidated for trial. They were tried and judgment was rendered in favor of Heth and against the Allen estate in both cases.
The Estate of Allen assigns three errors on this appeal: (1) the trial court erred in allowing introduction of parol evidence to explain clauses in the contract; (2) the trial court erred in finding the option to purchase was exercised timely; and (3) the trial court erred in determining the location of the acre of land reserved by the Allens under the lease and option agreement.
We conclude that there was no error committed by the trial court as to any of the issues herein particularly assigned. We will now address ourselves to a discussion of each issue.

*767
I. PAROL EVIDENCE WAS PROPERLY ADMITTED

In this case the intent of the parties, as expressed by the written contract, is difficult to determine because of the imprecise language creating the option and establishing the time for its exercise. There is also a difficulty encountered in the description of one acre of land excluded from the lease and option to purchase.
The term of the lease is stated to be seven years, but the beginning and ending dates describe a term that is six years, 11 months. There is a critical ambiguity' in the language creating the option and particularly its time for exercise. The language that establishes “. . .an option to purchase the property at the expiration of the term of this lease” leaves unanswered the question of precisely when the time began during which the purchaser might have exercised the option. Likewise, it leaves unanswered the question of how long that option existed. The contract is clear enough that an option to purchase was intended, for the terms of the sale were fully covered. The purchaser was given the right to decide at the end of the lease whether to pay in cash or on credit, and if he chose credit, the amount of the monthly payments had been calculated and the date of the first monthly pay-' ment was established. In short, while the contract clearly manifests an intent to grant an option to Heth, the period of time intended (and whether a period of time was granted at all) for the exercise of the option is capable of different constructions.
The other ambiguity existing in the contract has to with the one acre of land containing the Allen homeplace which the Allens excluded from the lease and the option to purchase. There is ambiguity and uncertainty in the language describing this acre of land for the reason that, applied literally, the description results in an absurdity. Ordinary reason and common sense compel us to conclude the parties did not intend the precise legal description of the property excepted from the lease and option to purchase. The language we refer to reads: (following the legal description of the 80 acres) . . LESS AND EXCEPT therefrom one acre in the form of a square and upon which lessor has his home.” The absurdity of literally interpreting this descriptive language is that one acre in the form of a square upon which lessor had his home would necessarily slice the dairy barn in two. Considering the lease and option contract as a whole and construing all of its provisions together, as we are required to do, it is obvious that the parties did not intend that the one acre reserved be in the form of a square.
Because of these ambiguities and uncertainties, and in an effort to get at the true intent of the parties, the trial court admitted parol evidence. The error of law which the trial court is accused of having made is the accused violation of Louisiana Civil Code art. 2276.[1] The admission of parol evidence here was not in violation of that article. Although the article prohibits parol evidence against and beyond what is contained in an act affecting immovable property, it does not prohibit parol when such evidence is offered and used to support and give effect to the contract. Dickson v. Ford, Clerk, 38 La.Ann. 736, contained the following language which was quoted in Collins v. Brunet, 239 La. 402, 118 So.2d 454 (1960):
“ ‘The reason or the philosophy of the rule which, as an exception, flows logically from the very terms of the general rule, is that parol evidence, in such cases, is admitted, not against or beyond what is contained in the acts as a contradiction of the clear recital or legal meaning of the stipulations contained therein, *768 but on the comrary, to give effect to the contract arising therefrom, by supplementing necessary information omitted therefrom, or to ascertain the true intent of the parties when the same is not clearly expressed or described therein. As thus understood and construed, the rule is not amenable to the charge that it tends to destroy or impair the sanctity or binding force of authentic acts, but on the contrary, it tends directly to enhance the validity and efficacy of such acts, by substituting light for darkness, certainty for obscurity, and truth for error.’ 38 La.Ann. at page 740. See, also, Landry v. Landry, 40 La.Ann. 229, 3 So. 728; Guaranty Bank & Trust Co. v. Hunter, 173 La. 497, 137 So. 904; Citizens Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822; Warden v. Porter, 228 La. 27, 81 So.2d 707.”
The trial judge properly resorted to a consideration of parol evidence to determine these ambiguous and uncertain provisions of the contract of lease and option.

II. THE OPTION WAS TIMELY EXERCISED

The parol evidence to which the trial court resorted to determine the intent of the parties included the testimony of Mr. Edwards, the attorney who drew up the document. It also included the testimony of Mrs. Allen, widow of the deceased Allen; she was personally present during the negotiations and she was familiar with the relationship of the parties throughout the seven year period. Finally, the trial court considered the testimony of Leo Heth, one of the contracting parties.
Mr. Edwards testified that the parties intended a seven year lease and that it was. his own inadvertence to use dates which in fact circumscribed a six year, 11 month lease. He admitted that it was a simple error of calculation and that the actual term that should have been stated in the lease was March 1, 1966, to February 28, 1973, or the first day of one month to the last day, seven anniversaries later, of the month preceding it. On several occasions Mr. Edwards pointed out that the option period was not to commence until the expiration of the lease. This is also apparent from the other testimony. That it was the intention of the contracting parties that the power to exercise the option was to arise only “at expiration of the lease” is one fact that is clear from the language of the contract. • So, the option commenced on March 1, 1973.- It was also clearly the intent of the parties that if the option was exercised the first payment on the purchase of the property was to be March 31, 1973. The purpose for establishing this date exactly one month beyond the expiration of the lease itself was for the benefit of Allen, to prevent there being any interruption in the receipt of payments. Allen recognized that from the outset of the lease a grace period of one month was permitted for the payment of the monthly obligations. Thus, a fair interpretation of the intent of the parties is that the option was to last exactly one month, that month being the month of March of 1973. This interpretation was supported by the testimony of Heth as his understanding of their mutual intent. Since the option was exercised in writing on March 16, 1973, it was timely exercised.

III. THE TRIAL COURT PROPERLY DETERMINED THE LOCATION OF THE ONE ACRE RESERVED BY THE ESTATE OF ALLEN.

The Allens had their home in the extreme northwest corner of this 80 acres. They also owned other property across the road from their house. They wanted to except their house, together with one acre of land, from the lease and option to sell. The Heths were agreeable. The parties therefore gave instructions to the attorney to “less and except” an acre of land to in- *769 elude the house. Edwards chose the following language as a description of this acre:
“. . . LESS AND EXCEPT therefrom one acre in the form of a square and upon which lessor has his home.”
The language “in the form of a square” was an improvident embellishment of language which was added by Edwards without authority from the contracting parties. A land surveyor testified at the trial that if a square acre was carved out to include the house, the south line of the square would necessarily cut right through the dairy barn. This could not have been the intention of the parties. Heth testified that the dairy barn was very much a part of the property he desired to lease and buy. The barn was where the cows were milked, where the milking equipment was located, and where the milk itself was cooled and stored. The dairy could not be run without it. Furthermore, the following testimony of Mr. Edwards clearly reveals that the acre was not intended-to-b^ a square:
“Q. Now, did the parties instruct you to less and except an acre in the form of a square? Do you recall?
“A. As I recall it, they did not. I think that was my doings to put the form of a square part in there.
“Q. Do you recall any instructions in regard to the home ?
“A. Yes sir, it was not to be sold, and he wanted a yard around it, that really were the instructions. He wanted an acre of ground.”
The trial court concluded that the one acre which the parties intended to reserve was the one acre actually occupied and fenced by the Allens during the seven years that the lease was in effect. The description of that one acre the trial court concluded to be as follows:
“Begin at the NE corner of the SEJ4 of the SE14 of said Section 30; thence N 88° 12 min. East 417.42 ft.; thence S 104.35 ft.; thence S 88° 12 min. West 417.42 ft. to road; thence North along same 104.35 feet to point of beginning.”
A review of the record clearly indicates that the one acre described by the trial judge in the judgment correctly conforms to the intent of the parties as borne out by the testimony.
We find that the trial court properly admitted parol evidence and that his determination of the facts herein is not manifestly in error.
For the reasons assigned, the judgment of the trial court is affirmed, with all costs of this appeal to be taxed to Cheryl Allen Moore, administratrix of the Estate of Edgar Allen.
Affirmed.

. LSA-C.C. art. 2276: “Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”