BROWN v. UNITED MOTOR CO., INC.

(February 11, 1929. Opinion and Decree.)

Harry L. Hammett, of New Orleans, attorney for plaintiff, appellee.

F. W. Gaudin, of New Orleans, attorney for defendant, appellant.

JONES, J. This is a suit for $450, alleged to be the unpaid balance of the selling price of plaintiff's automobile, after paying a repair bill of $25.

Petitioner alleges that, desiring to purchase a Hupmobile coupe in the month of November, 1922, he left with defendant company his Liberty roadster for sale, on the request of the vice president, Joseph Ruhl. Later his wife, who was acting as his agent during his absence from this city, was informed by Hudson, salesman of the defendant company, that they had an offer of $475 for the roadster, after making repairs amounting to $25, leaving a net

price of $450; that she accepted the said offer and the sale was completed. A short while thereafter, petitioner, when he returned to the city, called upon the defendant company for the Hupmobile coupe, but was informed that no such car was available at that time, although it had been distinctly agreed between him and the vice president of the company at the time his roadster was left for sale that he should be furnished with a coupe promptly. Defendant then, in violation of his agreement, tried to persuade petitioner to buy a Hupmobile sedan, but he declined to do so, and, as he greatly needed a car at once, he demanded the $450, at the same time offering to pay any commission due for the selling of his car, but defendant refused to comply with his demand.

Defendant answered as follows:

That plaintiff had agreed to purchase a Hupmobile sedan after he had been credited with the net proceeds of the selling price of his Liberty roadster; that the said roadster had been sold for $475 and the selling charges amounted to $59.65, leaving a balance due of $415.35. It averred that it was ready at all times to deliver this Hupmobile sedan, which had been contracted for by plaintiff, and that it declined to pay over the balance because plaintiff had breached the contract. It further averred that it had always carried in stock a complete line of Hupmobile cars, but that plaintiff had never made demand for the Hupmobile sedan, or any other model. It then prayed that the suit of plaintiff be dismissed and that the court order specific performance of the contract for the purchase of a Hupmobile car, but did not ask for any damages. There was judgment below for plaintiff for amount claimed, and defendant has appealed.

The above analysis of the pleadings shows that there is only a question of fact left for solution, namely, whether plaintiff contracted to buy a two-passenger Hupmobile coupe, or whether he merely contracted to buy a Hupmobile as averred by defendant.

The record shows that plaintiff, a traveling man who was but rarely in the city for any length of time, owned a two-passenger Liberty roadster, which he desired to trade in part payment of a new two-passenger Hupmobile coupe; that he called at the showroom of the defendant company some time in November, 1922, with his wife and friend, Mrs. Ellis. These three all testify that Mr. Brown then agreed to leave his roadster for sale with defendant, after stating positively that he wished a Hupmobile coupe about December 15, when he expected to return to the city for his Christmas holidays. These three also testify that no car was looked at, or discussed, except a two-seated Hupmobile coupe.

The wife of plaintiff testifies that about 10 days after their visit, Hudson, a salesman of defendant, telephoned her one day that he had an offer of $475 for the Liberty roadster, and that the car would net her $450, as a repair bill of $25 would have to be paid; that she then and there accepted said offer and the roadster was sold.

The car order blank introduced in evidence by the defendant company showed that this sale was made by Hudson for $475 on December 11, 1922.

Plaintiff and his wife both testify that plaintiff returned to the city about the middle of December; that he then tried repeatedly, by calling at the place of business of defendant, and by telephone, to get

delivery of the Hupmobile coupe, but was informed that they had none in stock and could promise no definite delivery thereof. Plaintiff then purchased, about December 22, a two-seated Dodge coupe.

Defendant's salesman, Hudson, testifies that the Liberty roadster was sold by him, as alleged, for $475; that a repair bill was due thereon for $25; that Brown wanted a Hupmobile (he does not specify any particular type); that Ruhl, the vice president of his company, refused to pay him a commission for selling the second-hand car until the Browns purchased a new car; that, accordingly, he saw Mrs. Brown several times after December 22, but before April 15, 1923 (when he left defendant company), vainly endeavoring to persuade her to purchase a Hupmobile sedan. He does not remember whether the defendant company had a two-passenger coupe on exhibition when the Browns called with Mrs. Ellis, or even whether the company was making this type of car at that time, but he does say that the Hupmobile factory could deliver any car in a short period, afterwards modifying this statement to apply only to the models which they were then carrying.

On cross-examination, he says that Brown wanted a four-passenger coupe, but that he tried to sell him a sedan, because in his estimation it was a better buy.

The vice president of the defendant company, Ruhl, testified that during the month of November, 1922, Mr. and Mrs. Brown had called at his place of business to buy a Hupmobile car (type not given); that he had then agreed to sell their Liberty roadster in part payment of the new car; that later (date not fixed), after this roadster had been sold, he had telephoned Mrs. Brown, and she had stated that they would buy the car as soon as they received some money, which was expected shortly; that he was still willing to carry out his contract and furnish a Hupmobile car. He identified his signature to a letter offered in evidence by his counsel, of date July 16, in which he offered to credit a certain gentleman in this city with a balance due Brown amounting to $332.28 on this transaction, provided the gentleman would purchase a new Hupmobile from him; that Brown had never made any demand for any type of Hupmobile, though he carried in stock all types, and he had never seen either one of the Browns, or heard anything more after his telephone talk with Mrs. Brown, until the trial of the case; that he had sold, perhaps, 20 or 30 Hupmobile coupes in this city and was still waiting for plaintiff to make demand for delivery of the car.

The above analysis of the pleadings and the evidence convinces us that the preponderance of the evidence is with plaintiff, because plaintiff and all his witnesses tell a consistent, probable story when they say that plaintiff demanded throughout a two-passenger coupe, as, at that time, there were only two in his family, and he had always had such a type of car. On the other hand, defendant would have us believe that plaintiff contracted to buy a Hupmobile car without specifying any special type, and without saying when he wished it delivered. As plaintiff was a traveling salesman, and as the evidence shows that he spent his holidays of three weeks in the city at Christmas time, it is highly probable that he would particularly wish an automobile at that time and that he would know and state what type of car he wanted.

As the defendant in its answer and in its testimony does not state the type of car which was to be purchased, the price

thereof, or the time of delivery, this court could hardly order specific performance of so indefinite a contract.

At the end of its brief, in the alternative, defendant asks that the court allow it a commission of $47.50 for selling the secondhand Liberty roadster, but there was no such demand in the answer, and the court properly excluded all testimony in reference thereto when an effort was made to show amount of commission claimed for selling a new Hupmobile. Furthermore, it is shown above that Hudson, the man who sold the roadster, testified that he had never been paid any commission for doing so.

Defendant claims in its answer charges of $59.65, but there is no proof of these charges, which are stated differently in the letter of defendant above referred to. Furthermore, the defendant has already been allowed a repair bill of $25.

For above reasons, the judgment is affirmed.