BOUTALL, Judge.
Exxon Corporation filed suit against Denis A. Barry and other owners of a seven acre tract of ground seeking specific performance of an agreement to establish a servitude upon a portion of the tract mea *827 suring 30 feet by 6 feet for the purpose of erecting and maintaining a modular sign. The defendants reconvened for a declaratory judgment decreeing that the agreement is unenforceable as a matter of Louisiana law. Nearly all of the evidence was stipulated and the trial court rendered two judgments in favor of defendants, one dismissing plaintiff’s suit and one maintaining defendants reconventional demand declaring that the agreement is unenforceable. From these judgments Exxon Corporation has appealed.
The issues in this case revolve around an agreement between Humble Oil & Refining Company (Exxon’s predecessor) and HSL Corporation, (the defendants’ predecessor in title) dated March 29, 1968. The heart of that agreement reads as follows:
“1. Upon written request from Grantee, Grantor will execute an appropriate instrument granting a servitude measuring 30 feet in length by 6 feet in width upon the southwesterly corner of Lot l-A-3, together with ingress and egress thereto. Said servitude being for the purpose of erecting and maintaining modular signs upon the said servitude area.”
The agreement referred to prior agreements between the parties in which HSL Corporation had agreed to sell Humble two parcels of ground and in which the seller agreed to execute a servitude agreement for each parcel the pertinent one being a “servitude measuring 30 feet in length by 6 feet in width upon the southwesterly portion of Parcel 2-A * * * to be located at a precise point mutually agreed to by the parties hereto.” Although there is some issue raised as to the change in apparent location from southwesterly portion to southwesterly corner and a change in lot designation, we see no need to consider these matters because the present owners assumed the obligations expressed in the later agreement of March 29,1968, and it is the terms of that agreement which are controlling of the issues here.
Some time after the March 29, 1968 agreement, HSL Corporation sold the tract in question to others, and eventually ownership passed into the hands of the present owners, all of whom took title subject to that agreement. Exxon eventually made demand upon these owners requesting that they execute a grant of servitude in accordance with a Survey of Sign Sight Servitude dated March 16, 1978 made by John D. Luecke, Surveyor. That proposed servitude was located in the southeasterly corner of the property. At trial it was conceded that plaintiff was aware that the proposed servitude was located in the southeasterly corner and not the southwesterly corner, but it was explained that this proposal was made because it was conceived that that location would be less objectionable to defendants, and that it was immediately adjacent to a New Orleans Public Service servitude from which electricity could be drawn to service the sign, without further disturbing the defendants’ plans for development. Plaintiff does not contend for the establishment of the servitude in that location, but contends for specific performance by location of the servitude in the southwesterly corner. In order to understand the problems confronting the parties, we reproduce a copy of the survey which shows the tract of ground to be quite irregular along its southerly and westerly lines because it runs along the perimeter of the right of way of the interchange of Highway I — 10 and Bullard Road. A simple examination of the tract survey shows a series of lines along the southerly and, westerly sides of the property, forming a series of intersections which could be considered to be corners.
[See following illustration.]

*828

*829 In an effort to show the identity of the southwesterly corner referred to in the agreement, plaintiff offered the testimony of the surveyor to show that only one of these intersections could properly be classified as the southwesterly corner. He testified that he used a method whereby he located a median north-south line of this irregular property, and then similarly located an east-west line. At the intersection of these two lines he concluded was the midpoint of the property and running a line in a southwesterly direction from the midpoint he concluded that the intersection of property lines close to that line was the southwesterly corner. On cross-examination however he admitted that there were three possible corners within the southwesterly quadrant which he had formed, and further that there were other methods by which a southwesterly corner could be arrived at. We find quite revealing his testimony that when he was first approached to locate the servitude that he could not decide exactly where to place it because of the ambiguities in the agreement, and so he consulted with plaintiff’s attorney who informed him that the best place to put it would be in the southeast corner location. He was later asked to determine the southwest corner for placement of the servitude, which he did in the manner above referred to. However he testified that he still could not place the servitude in the location which he found to be the southwest corner because he could not tell whether it would be on the northern side or the south side of the southwest line, nor could he tell whether the 30 foot dimension or the 6 foot dimension should be the proper frontage, nor which roadway to run it along.
Considering this testimony, along with all of the evidence in the case, it is apparent that the trial judge concluded that the agreement in question was vague, indefinite and ambiguous. In considering these ambiguities, it is apparent that the trial court was faced with so many uncertainties as to location that specific performance, i. e. the precise location of the servitude, was not available as a remedy to plaintiffs.
In City of New Orleans v. New Orleans and N. E. R. Company, 10 So. 401, 44 La. Ann. 64 (1892), the Supreme Court stated that specific performance cannot be demanded as an absolute right, as it rests largely on the discretion of the court, nor can it be granted unless the contract is fixed in its terms, and the liability of the defendant is so certain that the duty imposed upon him by the court in ordering specific performance can be readily ascertained and executed. To the same effect are Kaplan v. Whitworth, 40 So. 723, 116 La. 337 (1906); Snyder v. Wilder, 84 So. 104, 146 La. 811 (1920); and Tri-State Transit Company of Louisiana v. Sunshine Bus Lines, 160 So. 411, 181 La. 79 (1935).
In order for specific performance to lie, the courts have required that specific description of the property about which specific performance is compelled must be given in the instrument or document giving rise to the action. Thus, specific performance was refused with respect to a contract for the purchase of a vehicle where the type of car was not specified in the contract. See Brown v. United Motor Car Company, 120 So. 264, 11 La.App. 84 (1929). Similarly, specific performance was refused when the contract called for the sale of property in which the property description was inadequate. Whitaker v. Newburger, 45 So. 264, 120 La. 324 (1908). Conversely, we have been referred to the case of Sailers v. Stafford, Derbes & Roy, 173 La. 361, 137 So. 62 (1931) in which the Supreme Court upheld a bond for deed contract which contained some uncertainty as to property descriptions. We would distinguish that case noting that therein the object of the contract was for 10 lots of ground within a certain square, which were subject to change in location by the parties. The court in that case pointed out that the square had been sub-divided, and that the position, boundaries, and measurements of the square were fixed and the size and shape of the lots were specified. In the present case, neither the position nor the location of the servitude are fixed. Factually, this case lacks the specificity present in Sailers. Accordingly, we conclude that the *830 trial judge was correct in denying plaintiff’s demand for specific performance.
The reconventional demand goes beyond the question of whether specific performance may be had, and seeks a declaration that the agreement is unenforceable. Accordingly, we further direct our inquiry into the precise nature of the agreement in question. As we see it, the agreement does not grant a servitude per se, rather it involves the attempted enforcement of an agreement for the future establishment of a servitude. The defendant’s obligation is to “execute an appropriate instrument granting a servitude” and the document itself does not establish a servitude. If it had established a servitude, then this case would simply be a matter of enforcing the provisions of Civil Code Article 750 (reproducing the substance of former Article 779) which requires the owner of a servient estate to designate the location where the title does not specify the location of the servitude.
Instead we apply the provisions of Civil Code Article 730 (former Article 753) which provides: “doubt as to the existence, extent, or manner of exercise of the predial servitude shall be resolved in favor of the servient estate.” As noted in the comments, this provision does not change the law but reproduces the substance of former Article 753. We adopt the explanation of law set out in Comment (b):
“(b) It is a cardinal rule of interpretation that, in case of doubt, instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected. The rule incorporates into Louisiana law the civilian principle that any doubt as to the free use of immovable property must be resolved in favorem libertatis. See Domat, Les lois civiles dans leur ordre naturel, 1 Oeuvres de Domat 329 (ed. Remy 1828); 2 Toullier, Droit civil fran-cais 192 (1833). The Louisiana Supreme Court has repeatedly declared that ‘servi-tudes are restraints on the free disposal and use of property, and are not, on that account entitled to be viewed with favor by the law.’ Parish v. Municipality No. 2, 8 La.Ann. 145, 147 (1853), cited with approval in Buras Ice Factory, Inc. v. Department of Highways, 235 La. 158, 103 So.2d 74 (1958). See also McGuffy v. Weil, 240 La. 758, 767, 125 So.2d 154, 158 (1960): ‘any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner’. The rule that the proper interpretation of an ambiguous instrument is that which least restricts the ownership of the land has been applied by Louisiana courts in a variety of contexts. See, e. g., Whitehall Oil Co. v. Heard, 197 So.2d 672 (La.App.3rd Cir.) writ refused 250 La. 924, 199 So.2d 923 (1967) (determination of the question whether a landowner created a single servitude over contiguous tracts or a series of multiple interests.)”
Considering the ambiguities and uncertainties which we have discussed above, we cannot say that the trial judge erred in holding that the contract is unenforceable, and accordingly we affirm his judgment.
The judgments appealed are affirmed.

AFFIRMED.