536 So.2d 647 (1988)
Thomas A. GRANT, III, Plaintiff/Appellant,
v.
The OUACHITA NATIONAL BANK, Defendant/Appellee.
No. 20155-CA.
Court of Appeal of Louisiana, Second Circuit.
November 30, 1988.
*648 Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, Comegys, Lawrence, Jones, Odom & Spruiell by Wm. Paul Lawrence, II, Frank H. Spruiell, Jr., Shreveport, for Thomas A. Grant, III, appellant.
Booth, Lockard, Politz, LeSage & D'Anna by Nyle A. Politz, Shreveport, for Susan Grant, appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre by R. Patrick Vance, Andrew A. Braun, James E. Bailey, III, New Orleans, Hudson, Potts & Bernstein by James A. Rountree, Monroe, for Ouachita Nat. Bank, defendant/appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
The principal issue presented in this appeal is whether the trial judge erred in holding that a 1986 Act of Pledge covered 1984 debts. For the following reasons, we affirm the summary judgment.
In January 1984 the plaintiff Grant, his wife, and J.C. Steele, III borrowed ten million dollars to purchase land for a future real estate development called "Cities Services Properties" (CSP). A collateral mortgage on the land purchased was given as security. Then a second loan, executed in December 1984 for $425,000.00, was also secured with the same property and ONB added additional properties in a first amendment to the collateral mortgage originally executed by the parties for CSP.
In April 1986 Grant and his wife borrowed $1,060,000.00 for payment of interest on the first loan and another $821,000.00 for an unrelated personal loan from ONB. They executed a $20,000,000.00 collateral mortgage note, and a pledge of the note to ONB which encumbered additional security of mineral interests owned by the Grants in "Primos Production" (Primos). While Steele had no interest in Primos and there was no second amendment to the collateral package to formally include the Primos properties, there was specific language in the Act of Pledge in three places that expressed an intent that the Primos property would secure all the existing and future Grant debt. This intent to cross-collateralize all of his debts was supported by the language of the Summary Loan Agreement, signed by Grant after the Primos mortgage package was completed.
ONB first filed suit against the Grants and Steele for the $10,000,000 and another $425,000 related to the CSP, as well as thirteen notes of Steele's totaling $398,351.01. The later debts were the personal debts of Steele; they were unrelated to and unsecured by the CSP. ONB amended the petition and removed Steele's personal debts.
Plaintiff had more than adequately secured the second set of loans, and was able to maintain these loans on a current status. The instant suit occurred when Grant requested a pay-off price on the two 1986 notes he had secured with Primos property.
The Primos collateral package consisted of the promissory note for a loan of $1,060,000.00 with a $20 million Collateral Mortgage Note (Collateral Note) executed on April 8, 1986, secured by an Act of Collateral Chattel Mortgage, Collateral Mortgage Pledge and Assignment of Production (Mortgage), and accompanied by a contract, the Act of Pledge. The Act of Pledge stated the collateral package served as security for all of Grant's debts to ONB *649 that were due or to become due in the present and future. The collateral mortgage is the product of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt. Tallulah Production Credit Association v. Turner, 391 So.2d 885 (La.App. 2d Cir.1980); writ denied, 396 So.2d 900 (La.1981). The unique function of the collateral mortgage is to confer a mortgage note that can be pledged as collateral security for either a pre-existing debt, for a debt created contemporaneously with the mortgage, for a future debt, or for a combination of these. Id., Dissent at 891; Nathan and Marshall, "The Collateral Mortgage", 33 Tul.L.Rev. 497 (1973).
On April 22, 1986, the Grants had executed another loan evidenced by a promissory note for $821,000.00 and secured by the same property.
Grant filed this suit requesting a judicial determination that upon repayment of the loans represented by the two promissory notes he executed in 1986, the security given in 1986 would be returned. ONB third-partied Mrs. Grant and took the position that the security pledged for the 1986 loans was also pledged as security for the Grant debt created in 1984 by promissory notes executed in January and December, and it filed a motion for a declaratory summary judgment in favor of its position.
The key issue in this suit concerns the interpretation of the Act of Pledge and its provisions and whether it indicated Grant's intent to cross-collateralize all these debts, including the 1984 and 1986 loans.
The trial court granted the motion for summary judgment to ONB and stated the Act of Pledge executed by the Grants clearly established the assets were pledged to secure existing and future debts owed ONB. In reasons for that judgment the trial court relied on the language in three parts of the 1986 pledge:
1. "Pledgors hereby pledge the collateral note ... as security for payment ... of any and all indebtedness due to [sic] to become due to the Lender for loans and advances made and to be made to Pledgors, and any and all renewals and extensions of the same ... and such other liabilities of every kind and character of Pledgors Now or hereafter existing in favor of the Lender ...". (emphasis supplied)
That act also provided that notwithstanding the fact that some indebtedness may be secured by other security or guaranty:
2. "... it is agreed and understood that the Collateral Note and this pledge thereof shall secure all such indebtedness of Pledgors, whether now or hereafter represented by promissory notes, money loaned and advanced ... and shall be and are hereby accorded equal rank." (emphasis added)
Additionally, the act clearly states that:
3 The security furnished hereby shall be cumulative of all the security held or hereafter acquired by the Lender". (emphasis added)
The act was executed in authentic form before a notary and two witnesses.
Assignment of Error on Appeal
Grant appealed. ONB claims Mrs. Grant did not timely file an appeal and the trial court judgment is final as to her. The judgment was signed and a notice of judgment was mailed to the parties on April 6, 1987. The delay for filing a devolutive appeal is 60 days after the expiration of the delay for the motion for a new trial, the refusal of a new trial, or the date the notice of the denial of a new trial is mailed. La.C. C.P. Article 2087. Mrs. Grant did not file an appeal promptly; she did file an answer to Grant's appeal. La.C.C.P. Articles 2082, 2087 and 2121 provide that where a party to a suit desires the judgment to be changed as it affects him or her, an appeal must be filed. An answer to an appeal is a right granted an appellee when he wishes to have the judgment rendered against him and in favor of the appellant modified, revised or reversed in part or demands damages against the appellant. La.C.C.P. 2133. The statute further provides that an appellee may by answer request relief he has plead for in the trial court which was not granted.
In the instant case, Mrs. Grant was not an appellee. One appealing party cannot by answer to the appeal obtain an *650 amendment of the judgment in his favor against another appealing party; an independent appeal is required for such relief. Murry v. Bankers Fire & Marine Ins. Co., 198 So.2d 532 (La.App. 1st Cir.1967). The proper procedure for Mrs. Grant would have been to file an appeal, as did Mr. Grant.
Grant asserts one assignment of error which alleges there are seven contested facts:
Grant, Mrs. Grant and Steele were not business associates and partners in "Primos Production";
The court erred in failing to find Mrs. Grant's lack of signature and participation in the 1986 documents was a material issue of fact;
There is an ambiguity in the documents since there is no provision for the release of security upon payment of indebtedness;
The bank originally claimed Steele's personal debts were cross-collateralized with those of the Grants, but later amended this position which was inconsistent with their present contention that the personal borrowings of the Grants would not be cross-collateralized to Steele's debts;
The court erred in failing to determine the personal borrowings of all three formed no part of the credit agreement of 1983;
The court erred in failing to find any ambiguity in the documents submitted in support of the summary judgment;
The court erred in determining the act of collateral pledge and its wording would prevail over the act of collateral chattel mortgage, collateral mortgage pledge and assignment where the assignment is required by statute, R.S. 31:197, 199;
The court erred in failing to make a determination of the validity of the pledge and mortgages under R.S. 31:197.
While these may be relevant facts to the party's situation, for the reasons explained the contract must be ambiguous on its face for parol evidence on the intent of the parties to be admitted to vary the terms of the contract.
The trial court seemed to find Steele owned a part of Primos but plaintiff/appellant asserts this is a false finding of fact. In any case, even if Steele did not own a part of Primos, this fact does not affect the obligation of Grant to repay his solidary obligations nor does it change the pledge made by Grant to insure he would repay all of his loans.
ONB asserts the real issue is the intent of the parties as evidenced by the authentic act of pledge which stated it was made to secure ALL EXISTING debts of the Grants. Claiming the intent of the parties must be gleaned from the face of the document itself and not from parol evidence, ONB argues the summary judgment was proper.
The plaintiff or the defendant in the principal or any incidental action may move for a summary judgment in his favor for all or part of the relief he has requested. La.C. C.P. Art. 966(A). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to the interrogatives, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966(B); Sanders v. City of Blanchard, 438 So.2d 714 (La.App. 2d Cir. 1983); Swindle v. Haughton Wood Co., Inc., 458 So.2d 992 (La.App. 2d Cir.1984); Toole, et al v. Tucker; Caddo Parish Commission, 519 So.2d 348 (La.App. 2d Cir.1988).
The burden of proof is on the mover to show that any real doubt has been excluded. The mover's pleadings, affidavits and documents are to be scrutinized closely while those of the opponent are to be indulgently treated. Industrial Sand & Abrasives, Inc. v. Louisville & Nashville RR Co., et al, 427 So.2d 1152 (La.1983).
In this case the mover offered all of the pleadings filed in this suit and the petitions filed in two related suits; four promissory notes executed in January 1984, December 1984, and on April 8, 1986 and April 22, 1986; the Collateral Mortgage Note; the Collateral Mortgage; the Act of Pledge; a July 1983 Loan Agreement and a Summary Loan Agreement.
*651 The contractthe Act of Pledgestated the Primos security was pledged for all debts due or to become due and made or to be made. The Summary Loan Agreement fully supports the language of the Act of Pledge in its first paragraph which states:
"This collateral is to be cross-guaranteed to cover other debts of Mr. Grant now existing or contracted in the future."
Mrs. Grant filed an affidavit saying she had not signed the Summary Loan Agreement, she had no knowledge of any agreement to cross-collateralize her interest in Primos, and she did not intend to pledge her assets to secure those of Steele, the business associate in the CSP. Mrs. Grant did sign the Act of Pledge and she did not allege that act was null due to a vice of consent, that it was a simulation or that it had subsequently been modified.
Grant, the appellant herein, filed a memorandum in opposition to the summary judgment and exhibits which included pleadings, the mortgage, an amendment to the 1984 Collateral Agreement, two letters, the Discount Committee Minutes of March 26, 1986, copies of the promissory notes, copies of participation agreements, and his own affidavit. By affidavit Grant declared what his personal intent was and denied he ever intended any type of cross-collateralization. He did not deny signing the Act of Pledge or the Summary Loan Agreement, nor did he allege vice of consent, simulation, nor subsequent modification.
The court must first ask whether the supporting documents presented are sufficient to resolve all material issues of fact, Sanders, supra. If the evidence presented is subject to conflicting interpretations or reasonable men might differ as to its significance, summary judgment is not proper. Jackson v. St. Teacher's Retirement System of La., 407 So.2d 416 (La.App. 1st Cir.1981).
In this case, the review of the materials presented must be governed by the law on interpretation of contracts.
The interpretation of a contract begins with the document itself. La.C.C. Articles 2045-2057. By the Act of Pledge executed on April 8, 1986, the Grants contracted to pledge certain assets in return for the bank's promise to loan them money. Additionally, they promised the assets listed would serve as security for existing and future loans they had with ONB. La.C.C. Art. 2046 states that when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. If a court does attempt to discern the intent of the parties, the contract must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a whole.
Louisiana jurisprudence on interpretation of contracts has always accorded great weight to this latter rule. In Maloney v. Oak Builders, 256 La. 85, 235 So.2d 386 (La.1970), for example, the court asserted that when a clause of a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. In Shanks v. Callahan, 232 So.2d 306 (La.App. 1st Cir. 1969), the court said that the parties to a written contract are bound by its terms as written. In J.M. Brown Const. Co. v. D & M Mechanical Contractors, Inc., 222 So.2d 93 (La.App. 1st Cir.1969), the court said the rule of strict construction does not authorize the perversion of language or the creation of ambiguity where none exists nor does it authorize courts to make a new contract when the language employed by the contracting parties clearly expresses their intent.
The Act of Pledge cemented the contract between the parties that allowed the loan to be granted.
A pledge is a contract by which one debtor gives something to his creditor as a security for his debt. La.C.C. Art. 3133. Here, the Act of Pledge was an authentic actpassed before a notary public in the presence of two witnesses pursuant to La. C.C. Art. 1833. An authentic act constitutes full proof of the agreement it contains. La.C.C. Art. 1835. As with all contracts, the provisions of the Act of Pledge *652 constitute the law between the parties. La.C.C. 1983.
Parol evidence cannot be introduced to negate or vary the terms of this Act of Pledgea written contract between the partiesunless it proves vice of consent, simulation or subsequent modification. La. C.C. Article 1848. A "vice of consent" is error, fraud or duress. La.C.C. Article 1948.
Grant asserts the typographical error in the Act of Pledge, "of any and all indebtedness due to [sic] to become due" creates ambiguity enough to preclude summary judgment. When the contract's provisions are read as a whole, it is apparent the phrase should have read:
"of any and all indebtedness due or to become due ..."
Each provision in a contract must be interpreted in light of other provisions so that each is given the meaning suggested by the whole. La.C.C. Art. 2050; Lambert v. Maryland Co., 418 So.2d 553 (La.1982); Cahn Electric Company Inc. v. Robert E. McKee Inc., 490 So.2d 647 (La.App. 2d Cir. 1986); Frank's Petroleum, Inc. v. Mayo, 438 So.2d 696 (La.App. 2d Cir.1983); Tallulah Production Credit Association v. Turner, 391 So.2d 885 (La.App. 2d Cir. 1980).
Contracts must be construed in such a way as to lead to logical conclusions and give effect to the obvious intention of the parties. La.C.C. Art. 2046; Frank's, supra.
In Bank of Coushatta v. Patrick, 503 So.2d 1061 (La.App. 2d Cir.1987), we wrote that where the words of the Collateral Pledge Agreement were clear, explicit, and led to no absurd consequences, and the party did not plead fraud, error or mistake, parol evidence was inadmissible to alter the terms of the instrument.
In the instant case the trial judge ruled the mis-typed or mis-stated expression "due to to become due" did not create such an ambiguity "as to overwhelm the parol evidence rule". He was correct.
Here, there is no ambiguity in the language of the pledge that would justify the use of parol evidence to clarify a genuine issue of material fact. Grant and his wife both signed the pledge. None of the filings made by Grant in response to the motion for summary judgment create a genuine issue of material fact with regard to the bank's position that this pledge covers all of Grant's debts. Where there is no ambiguity nor fraud, the plaintiff has no right to use parol evidence to vary the terms of the document or create an issue of fact.
The trial court also referred to the summary loan agreement which was executed on April 3, 1986 and provided:
"This collateral is to be cross guaranteed to cover other debt of Mr. Grant now existing or contracted in the future...."
While this summary loan agreement is not a notarized document, nor did Mrs. Grant sign it, it does support the trial court's interpretation of the collateral pledge agreement. The pledge agreement was designed to secure the debt of Grant and the fact that someone else may have been solidarily liable with Grant on the earlier debt owed by Grant to ONB does not change the effect of the pledge agreement, it does not create any ambiguity in Grant's agreement to the pledge, nor does it create a genuine issue of material fact.
Only parol evidence that would negate or change the terms of a contract is excluded by statute. La.C.C. 1848 (formerly article 2276). Where parol evidence supports the clear intent of the parties as evidenced by the document itself, it is admissible. Heth v. Moore, 316 So.2d 764 (La.App. 1st Cir. 1975). This court stated in Wimbush v. Jones, 136 So.2d 704 (La.App. 2d Cir.1962), "our courts have consistently construed article 2276 [now article 1848] to allow parol evidence when it tends to support and not to destroy the authenticity of the act."
The quoted language of the Summary Loan Agreement, supra, illustrates that Grant did intend to pledge the Primos package to ONB to further secure his debts with ONB. The trial court was not wrong in considering this language. The court's determination that the Act of Pledge was sufficiently clear to allow summary judgment was proper.
*653 Conclusion
The Act of Pledge recognized the Grant's prior indebtedness and expressly stipulated in more than one phrase and in several different paragraphs that the prior, present and future indebtedness would be secured by the Primos Collateral Package. The Act of Pledge was executed as an authentic act by the Grants. The parol evidence rule applies to exclude the type of evidence submitted by Grant since it attempts to vary the terms of the act without fitting into a permissible exception granted by statute. The Summary Loan Agreement is admissible since it supports the act as it is written.
The contract was not ambiguous. Since it must be read as it was written and agreed to by the parties, the trial court's conclusions were correct. The declaratory summary judgment was properly granted.
For these reasons, the judgment of the trial court is AFFIRMED, at appellant's cost.

APPENDIX
I. LOANSEvidenced by Promissory Notes
 A. January 12, 1984 $10,000,000.00
 B. December 31, 1984 $ 425,000.00
 C. April 8, 1986 1,060,000.00
 D. April 22, 1986 821,000.00
II. SECURITY
 A. DeSiard Land Package Mortgage on
 land itself & other
 property
 B. Primos Package Mortgage on
 mineral interests
 1) 1$20 million Collateral Mortgage Note
 2) Act of Collateral Chattel Mortgage and Collateral Mortgage, Pledge and
 Assignment of Production (Actually a mortgage and assignment of
 mineral interest).
 3. Act of Pledge of Collateral Mortgage Note
 4. Promissory Notes
 a. Promissory Note for $1,060,000
 b. Promissory Note for 821,000