IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2008

Charles R. Fulbruge III
Clerk

No. 08-30580
Summary Calendar

SAU DINH

Plaintiff - Appellant

v.

LOUISIANA COMMERCE AND TRADE ASSOCIATION SELF INSURERS'
FUND

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-9653

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff Sau Dinh, an employee of Structure Services, suffered injuries while performing work for his borrowed employer, KYE, Inc. Following an administrative case holding KYE the responsible employer for Dinh's benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901, et seq., Dinh sued Structure's insurance carrier, the Louisiana

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Commerce and Trade Association Self Insurer Fund (the Fund), arguing that it ought nonetheless be responsible for his LHWCA benefits. The district court granted summary judgment in favor of the Fund, finding that its coverage obligations did not extend to the benefits at issue. We affirm.

## I. FACTS

This appeal arises from a dispute over whether the Certificate of Insurance (Certificate) issued by the Fund to Structure provides coverage for benefits owed under the LHWCA to Dinh, a payroll employee of Structure who sustained injuries while working for KYE as a borrowed employee.

The Fund was the workers' compensation carrier for Structure. Pursuant to an Out Source Agreement, Structure provided laborers, including Dinh, to work at KYE's shipyard. While working aboard a KYE vessel, Dinh sustained injuries entitling him to benefits under the LHWCA. The Fund, as Structure's carrier, began paying these benefits.

Thereafter, Dinh filed a tort suit against a number of defendants, including KYE. The Fund intervened in the suit and sought reimbursement from KYE for the compensation benefits it had paid Dinh. The Fund argued that KYE, as Dinh's "borrowed employer," was Dinh's employer under the LHWCA and, as such, was solely responsible for the payment of his worker's compensation benefits. See Temp. Employment Servs. v. Trinity Marine Group, Inc., 261 F.3d 456, 459-60 (5th Cir. 2001) (citing Total Marine Servs., Inc. v. Dir., OWCP, 87 F.3d 774, 779 (5th Cir. 1996)) ("If the contractor is the employee's 'employer' under the borrowed servant doctrine, the contractor is liable" for compensation benefits under the LHWCA.). The district court held that Dinh was KYE's borrowed employee, but that an indemnity clause in the Out Source Agreement between KYE and Structure barred the Fund's claim against KYE

for reimbursement of LHWCA benefits that the Fund had paid to Dinh.[1]  The Fund appealed that ruling and we affirmed.  Dinh v. Am. Freedom Vessel, 155 F. App'x 137 (5th Cir. 2005) (unpublished).  As a result of the finding that KYE was the borrowing employer of Dinh, the Fund ceased paying Dinh compensation benefits.

After the Fund ceased paying Dinh's benefits, he filed a claim with the United States Department of Labor for his LHWCA benefits against Structure, the Fund, and KYE.  The administrative law judge found that KYE, as Dinh's borrowing employer, was the party responsible for paying Dinh's benefits under the LHWCA.  Dinh also contended that the indemnity clause between Structure and KYE, in conjunction with the Certificate between Structure and the Fund, obligated the Fund to pay Dinh's LHWCA benefits.  The administrative law judge did not reach this issue.  Rather, he determined that he lacked jurisdictional authority to construe the relevant contracts based on our decision in Trinity, 261 F.3d at 456.  Although Dinh had a statutory right to appeal the administrative ruling, he declined to do so.  See 33 U.S.C. § 921(b) (1984).

Dinh subsequently filed this lawsuit, seeking to hold the Fund responsible for his LHWCA benefits.  The parties filed cross-motions for summary judgment; the district court granted the Fund's motion and denied Dinh's motion.  In so ruling, the district court focused primarily on the Certificate between Structure and the Fund.  The district court determined that, regardless of Structure's obligation to indemnify KYE under the Out Source Agreement, the unambiguous language of the Certificate limited the Fund's coverage to Structure's obligations

---

[1] In relevant part, the Out Source Agreement provides:

> Structure Services, Ltd. Agrees to indemnify and hold [KYE] harmless from any claim due to negligence or injuries of their employees or by any governmental claim for withholding taxes, F.I.C.A. taxes and unemployment taxes attributable to covered workers.

under the worker's compensation law. Because KYE was the responsible employer for Dinh's LHWCA benefits, the district court determined that his injuries did not implicate the Certificate between Structure and the Fund. This appeal ensued.

## II. DISCUSSION

The scope of our inquiry in this appeal is limited. As mentioned, we have already held that the Out Source Agreement between Structure and KYE contains a valid indemnification clause, obligating Structure to indemnify KYE for any compensation benefits KYE owes to a borrowed employee. See Dinh, 155 F. App'x 137. Additionally, the administrative law judge has determined that KYE, as the borrowing employer, is the responsible employer for Dinh's LHWCA benefits, and Dinh has not appealed that ruling.[2] Thus, the sole issue before this Court is whether the Certificate extends the Fund's coverage obligations to compensation benefits that Structure owes under an indemnity agreement. We agree with the district court that it does not.

We review a grant of summary judgment de novo, applying the same standard as the district court. Chacko v. Sabre, Inc., 473 F.3d 604, 609 (5th Cir. 2006). A district court properly grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The parties agree that Louisiana law must guide our interpretation of the Certificate. Under Louisiana law, an insurance policy is a contract that courts should construe by employing the general rules of interpretation set forth in the Louisiana Civil Code. Reynolds v. Select Properties, Ltd., 634 So. 2d 1180, 1183

---

[2] The time for Dinh to appeal this ruling has expired. Section 921(b) provides that a compensation order becomes effective when filed with the deputy commissioner and becomes final unless an appeal is filed within thirty days thereafter. The compensation order in this case was filed with the deputy commissioner on March 14, 2006.

(La. 1994) (citations omitted). Under the Civil Code, "[t]he parties' intent, as reflected by the words of the policy, determine[s] the extent of coverage." Id. "Each provision [of the policy] must be interpreted in light of the other provisions so that each is given the meaning suggested by the [policy] as a whole." LA. CIV. CODE ANN. art. 2050 (1985). We must avoid construing the policy in an "unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." Reynolds, 634 So. 2d at 1183 (citations omitted). "Where the language in the policy is clear, unambiguous, and expressive of the" parties' intent, we must enforce the agreement as written. Id.

The Certificate is an insurance contract between Structure and the Fund – KYE is not a party to that agreement. The Certificate contains two provisions potentially applicable here. Part One states "[The Fund] will pay promptly when due the benefits required of [Structure] by the Worker's Compensation Law of Louisiana." The Fund does not contest that Part One provides coverage for benefits required of Structure under the LHWCA despite contrary language in the policy. Under Part Two, the Fund agrees to:

> [P]ay on behalf of [Structure] all sums which [Structure] shall become legally obligated to pay as damages because of bodily injury by accident or bodily injury by disease, including death resulting therefrom, sustained only within the State of Louisiana by any employee of [Structure] arising out of and in the course of his employment by [Structure] in operations within the State of Louisiana only.

Part Two, however, excludes "[l]iability assumed under contract" from the Fund's coverage obligations.[3]

---

[3] Part Two also excludes coverage for bodily injury resulting from work covered by the LHWCA. It further excludes coverage for any "obligation imposed by a Workers' Compensation . . . law, or any other similar law."

It is clear that neither of these provisions extends the Fund's coverage obligations to liabilities which Structure assumes under an indemnity agreement. The coverage afforded to Structure by Part Two explicitly excludes liabilities assumed by contract. Part One, by its express terms, applies only to "benefits required of [Structure] by the Worker's Compensation Law of Louisiana." Payments that Structure owes to KYE under the indemnity provision of the parties' Out Source Agreement are not benefits required of Structure by the compensation law; rather, they are liabilities that Structure has assumed under contract. Indeed, Dinh has already obtained an administrative ruling that KYE is the responsible employer for the purpose of Dinh's LHWCA benefits. That decision establishes that the compensation law does not require Structure to pay Dinh any benefits for injuries he suffered while working for KYE as a borrowed employee. In order to extend the Fund's coverage obligations to Dinh's LHWCA benefits, we would have to ignore Part Two's explicit exclusion of contractual liabilities or Part One's express limitation to the benefits owed by Structure under Louisiana's worker's compensation law. The rules of contractual construction allow us to do neither. See Reynolds, 634 So. 2d at 1183.

Dinh argues that the Certificate is ambiguous because the coverage afforded by Part One does not explicitly exclude liability assumed under contract as does the coverage afforded by Part Two. Dinh's argument ignores the fact that an exclusion is required only if an event otherwise would be covered by the language of the policy. Part One does not cover indemnity obligations and, therefore, does not need an exclusion for such assumed liabilities. Unlike Part One, the coverage afforded by Part Two could cover liabilities that Structure contractually assumed were it not for the explicit exclusion. Thus, no ambiguity exists.

Dinh argues further that ambiguity in the Certificate exists because, while the language of Part One limits coverage to claims under Louisiana compensation law, the Fund admits that coverage under this part extends to LHWCA claims (claims under federal law). Such extrinsic evidence, however, is inadmissible to make ambiguous an otherwise unambiguous contract. See Grant v. Ouachita Nat'l Bank, 536 So. 2d 647, 652 (La. Ct. App. 1988). The fact that the parties, by practice, have extended the Fund's obligations beyond the Certificate's explicit terms cannot be used to create an ambiguity in the language of the Certificate where none exists.

Nor can Dinh's expectations bind the Fund without its knowledge or consent. A valid contract requires the mutual consent of all contracting parties. See LA. CIV. CODE ANN. art. 1927 (1985). Here, regardless of Structure and KYE's expectations concerning the scope of the Fund's coverage, only the Fund could agree to cover Structure for indemnity payments owed to KYE. See generally Evanston Ins. Co. v. Atofina Petrochemicals, Inc., 256 S.W.3d 660, 664 (Tex. 2008) (applying Texas law).[4]

In support of his argument that the Certificate itself covers the benefits at issue here, Dinh notes that the Certificate provides the Fund a right to adjust Structure's insurance premiums based on its actual exposure risk. To give effect to this right, the Certificate requires that Structure maintain records and contracts relevant to coverage and provides the Fund with the right to conduct an audit. The right to adjust premiums does not constitute an agreement to insure an unknown contract. As previously discussed, the indemnity clause of the Out Source Agreement between Structure and KYE is not relevant to the

---

[4] In Evanston, the Texas Supreme Court was faced with the question of whether an indemnity agreement between the parties that formed the basis for one party's purchase of insurance covering the other could limit the terms of the policy actually purchased. It held that the insurance policy, not the indemnity agreement, governed the insurer's obligations. 256 S.W.3d at 664.

Fund's coverage obligations, because Structure's contractual obligations do not come within the scope of the Certificate's coverage provisions.[5]

Finally, Dinh argues that, under the "reasonable expectations doctrine," we must construe the Certificate in favor of coverage because Structure reasonably expected its LHWCA coverage with the Fund to extend to KYE. As the district court correctly noted, however, the "reasonable expectations doctrine" applies only if the contract at issue is first found to be ambiguous. See Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 517 (5th Cir. 2005) (The "reasonable expectations doctrine" provides that "ambiguities within an insurance policy will be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." (internal quotations omitted)). As the Certificate here is unambiguous, the doctrine does not apply. Given the plain wording of the Certificate, Structure could only ensure coverage for its indemnity obligations under the Out Source Agreement by obtaining the Fund's consent. Because Structure failed to obtain this consent, the district court's judgment must be affirmed.

## III. CONCLUSION

The district court's judgment is AFFIRMED.

---

[5] Dinh also argues that The Fund did in fact conduct an audit of Structure's records and identified and considered Dinh's wages in calculating Structure's adjusted premium. As mentioned, however, The Fund only became aware of the Out Source Agreement following Dinh's injuries and thus did not include the specific risks associated with his work for KYE when making this calculation. Regardless, the parties' actions cannot trump the plain language of the Certificate which excludes Dinh's compensation benefits from coverage.